SANDERS, Chief Justice.
A grand jury indicted Jimmy Trosclair with armed robbery, a violation of LSA-R.S. 14:64. A jury found defendant guilty as charged. The court sentenced him to twenty years at hard labor. In appealing his conviction and sentence, defendant relies upon five assignments of error.
The context facts are that:
On November 19, 1974, Trosclair, armed with a shotgun, robbed Emmett Copeland of $18, in the presence of Copeland’s girl friend, Maxine Clouatre.
ASSIGNMENT OF ERROR NO. 1
Defendant argues that the trial judge erred in failing to grant a mistrial when the prosecutor made the following comment upon witness, Maxine Clouatre’s, testimony:
“Your Honor, at this time both of the witnesses, this witness was under the gun and anything — ” (Tr. p. 81.)
*1166 In support, defendant urges LSA-C.Cr.P. Art. 770(1) and 771(1) alternatively.
Maxine Clouatre, who was present during the robbery of Copeland, testified:
“I really didn’t see it [the shotgun] until he approached right to the car and he raised the shotgun and I sort of suspected something was going on. I told Emmett, I said, ‘Something is going on.’ I says, ‘I got a bad bad feeling.’ I said, ‘I’m never wrong when I get these feelings.’ I said, ‘You got a pencil, write down the license number.’ Or something. He says, ‘Well, I ain’t got no pencil.’ ” (Tr. p. 79.)
Defense counsel objected to her testifying to what Emmett Copeland said on the basis of hearsay. Thereafter, the prosecutor, arguing res gestae, stated that Mrs. Clouatre was “under the gun” at the time Copeland made the statement to her. Defense counsel then objected to the prosecutor’s statement. The trial judge immediately admonished the jury to disregard the statement.
Any prejudice which resulted from the prosecutor’s statement that Mrs. Clouatre was under the gun at the time Copeland made his statement to her was corrected. Following his admonition, the judge asked the witness:
“Was the defendant present when these things were being said, was Mr. Trosclair there, was he present?”
Mrs. Clouatre replied:
“No, he wasn’t there. He was out [outside of the car in which she and Copeland were sitting]. He was coming to the car. He was approaching us.”
Therefore, the State properly argued that Copeland’s statement to her was not subject to defendant’s hearsay objection as it formed part of the res gestae of the robbery. His argument that Mrs. Clouatre was “under the gun” was not improper since it described the situation at the scene of the robbery.
Regardless, the prosecutor’s statement does not fall within the purview of LSA-C. Cr.P. Art. 770(1), requiring a mistrial, as it did not refer to “[r]ace, religion, color or national origin.”
Assignment of Error No. 1 is without merit.
ASSIGNMENT OF ERROR NO. 2
Herein defendant argues that the trial judge erred in admitting a shotgun into evidence, as it was not properly identified as the one used in the robbery.
Before introducing the shotgun into evidence, the State asked Mrs. Clouatre, an eyewitness to the robbery, “Is that the gun?” She replied, “Yes, that’s the gun.” (Tr. p. 88.)
Mrs. Clouatre unqualifiedly identified the gun as the one used in the armed robbery. Once a witness identified the object sought to be introduced, it is properly admitted. Thereafter, connexity is to be determined by the jury. State v. Henderson, La., 337 So.2d 204 (1976); State v. Lisenby, La., 306 So.2d 692 (1975); State v. Roquemore, La., 292 So.2d 204 (1974).
Assignment of Error No. 2 is without merit.
ASSIGNMENT OF ERROR NO. 3
Herein defendant alleges that the trial judge erroneously commented on the testimony of witnesses Anthony Ditcharo and Maxine Clouatre. LSA-C.Cr.P. Art. 772. Defendant argues that the comments prevented the witnesses from testifying properly.
Through the testimony of its witness, Anthony Ditcharo, defense counsel attempted to impeach Mrs. Clouatre’s general reputation in the community. The State objected to Ditcharo’s testimony regarding particular acts, vices, or courses of conduct, as prohibited by LSA-R.S. 15:491. After sustaining the State’s objection, the court instructed the defense that the requisite foundation would have to be laid before the witness could testify to Mrs. Clouatre’s general reputation in the community. In attempting to lay the foundation, defense counsel elicited the following testimony:
“Q. Did you know other people in the community where she lived that knew her?
*1167 “A. In the community? Well, where we was staying at, I never knew nobody there hardly.
“Q. I mean places you frequented, the community means any place she hung out, worked in or where you stayed.
“A. The only place I ever went with her was bars, you know.”
“Q. Did [the] manager of any of these places know her?
“A. Yes, sir.
“Q. What was their opinion of her, what did they think of her?”
“THE STATE:
I object at this time, there’s been no foundation laid to these people, no matter who they were, they haven’t been established who they are or that they knew her generally in the community at the time. Counsel has laid a foundation regarding a specific isolated instance.
“THE COURT:
I agree. He testified or, you heard his testimony, I don’t want to repeat anything. I don’t think you’ve laid the proper foundation at this time. Objection is sustained.
“Q. Do you know any specific manager of any, like the Silver Dollar or any other lounges you mentioned that knew this Mrs. Maxine Clouatre?
“A. Yeah, Jack Gassenberger, he owns the Silver Dollar.
“THE COURT:
It’s not specific people that knew her, it’s generally, that’s the point.
“Q. Well, generally speaking, the people that you knew that knew her, what was their opinion of her?
“THE COURT:
Just a minute.
“THE STATE:
Your Honor, I’ll voice my same objection. We haven’t established the people that he knew who knew her.
“THE DEFENSE:
He just named one.
“THE STATE:
One, we’re talking about a community, we’re talking about a general reputation in the community.
“THE DEFENSE:
“Q. Can you name some other people who knew her?
“A. Ralph Gros.
“Q. Where does Ralph Gros work?
“A. Well, he don’t work. He was living with her sister.
“Q. Un-huh. All right, anybody else can you think of?
“A. Henry, Henry Duffourc, and let me see, Cuccia, Wilma Trosclair.
“Q. And to your knowledge what did these people think of Maxine Cloua-tre?
“THE STATE:
Your Honor there’s been no foundation that these people have ever even relayed the opinion of this witness of what they knew of Maxine Clouatre. He’s asking him now to draw a conclusion from something that is not even in evidence. There’s no predicate laid that ever told him anything about her.
“THE DEFENSE:
I withdraw my question and ask another one.
“THE DEFENSE:
“Q. Have you ever discussed Maxine Clouatre with these people?
“A. Why one or two of them, one of them, she bet—
“THE COURT:
Don’t say, just answer the question he asked.
“THE WITNESS:
Yeah.
“THE DEFENSE:
“Q. And what they state to you?
“A. Well—
“THE STATE:
Your Honor, I object again the same objection.
“THE COURT:
One or two people is not enough to establish a general reputation in the *1168 community. Court maintains the objection.” (Tr. pp. 188-191.)
In State v. Corbin, La., 285 So.2d 234 (1973), we discussed impeachment of a witness premised upon his reputation in a specific, limited group. Therein we stated:
“This is not permissible. Credibility of a witness may be attacked generally, by showing that his general reputation for truth or moral character is bad. La.R.S. 15:490. The inquiry, however, must be limited to general reputation, and cannot go into particular acts, vices or courses of conduct. La.R.S. 15:491. What is called for in such cases is the opinion of the community, and not the witness. It is elementary that the individual opinion of the impeaching witness is not admissible, either as a basis for his estimate of the truth and veracity of the witness sought to be discredited, or as proof of the general reputation of the witness whose credibility is attacked. State v. Foster, 153 La. 154, 95 So. 536 (1923). As the trial judge observed, ‘reputation is not established by an inquiry as to a person’s standing within a certain segment or circle of the population but can be established only by reputation in the community at large.’ ”
The trial court judge properly interrupted the direct examination of the witness during the defendant’s attempt to lay a foundation for introduction of evidence regarding Mrs. Clouatre’s reputation and instructing the witness not to answer a question to which the prosecutor had objections. Evidence of Mrs. Clouatre’s reputation among a small group, bar owners, is not admissible. State v. Corbin, supra.
Moreover, the trial judge is given wide discretion in controlling the examination of witnesses. LSA-R.S. 15:275. Unless an abuse of this discretion is shown, a conviction will not be reversed. State v. Kaufman, La., 331 So.2d 16 (1976); State v. Peters, La., 302 So.2d 888 (1974).
Defendant also objected to the judge’s instruction to prosecution witness, Maxine Clouatre, not to answer a question propounded by defense counsel concerning her possible violation of the sequestration rule. The trial court judge interrupted the witness to ask all counsel whether they desired to have the matter discussed in the presence of the jury. Defense counsel preferred to have the jury removed. Defendant cannot now be heard to complain of the judge’s interruption in light of his agreement to remove the jury.
Assignment of Error No. 3 is without merit.
ASSIGNMENTS OF ERROR NOS. 4 AND 5
In Assignments of Error Nos. 4 and 5, defendant contends that the trial judge erred in refusing to order a mistrial, grant a new trial or admonish the jury to disregard a reference to another crime made by the prosecution witness, Mrs. Clouatre. The objectionable reference to another crime occurred as follows:
“DEFENSE COUNSEL:
“Q. Were you robbed that day, Mrs.
Clouatre?
“A. No, I wasn’t. I was raped.
“Q. You were raped?
“A. Correct.
“Q. That’s a—”
At this point, defense counsel requested a conference; the trial judge and all counsel removed to chambers. Defendant argues that Mrs. Clouatre’s reference to the rape was so prejudicial that he could not receive a fair trial.
Defense counsel complains that the witness’s answer was unresponsive to his question. We, however, discredit his argument because immediately thereafter defense counsel specifically asked the witness if she was raped.
Moreover, this Court has previously allowed the admission in armed robbery prosecutions of testimony regarding a rape committed during the course of the robbery. State v. Curry, La., 325 S.o.2d 598 (1976); State v. O’Conner, La., 320 So.2d 188 (1975); State v. Hatch, La., 305 So.2d 497 (1974).
*1169 It is especially significant here that the witness never testified who raped her. She testified that Wayne Clark was directly involved in the robbery. Clark, a passenger in the witness’s automobile, directed her to follow a car driven by defendant Trosclair into a vacant lot and park behind Trosclair’s car. Trosclair and Clark then pulled guns and robbed Emmett Copeland.
Moreover, contrary to defendant’s contention that no admonition was given, the trial judge’s Per Curiam indicates that an admonition was given. Defendant’s motion for a new trial refers to an admonition being given. Although the trial transcript does not reflect an admonition, we accept the recital of the Per Curiam, since it is supported by the defense pleadings.
Finding no abuse of discretion in the trial court judge’s refusal to grant a mistrial or a new trial, we dismiss defendant’s fourth and fifth assignments as having no merit.
For the reasons assigned, the conviction and sentence are affirmed.
CALOGERO and DENNIS, JJ., concur.