408 So.2d 1221 (1982)
STATE of Louisiana
v.
Ulysses LONG.
No. 81-KA-0592.
Supreme Court of Louisiana.
January 25, 1982.
*1223 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
David Randall Buckley, M. Michele Fournet, Baton Rouge, for defendant-appellant.
BLANCHE, Justice.
Ulysses Long was convicted on two counts of armed robbery, R.S. 14:64, and sentenced to serve consecutive terms of fifty years at hard labor on each count without benefit of probation, parole or suspension of sentence. After defendant fired his attorney, the East Baton Rouge Parish Public Defender's Office was appointed counsel for defendant on appeal and now argues one of the three assignments of error filed below as grounds for reversal of defendant's conviction. Defendant also filed a pro se brief and assigned eight trial errors. Because we find that none of these assignments have merit, defendant's conviction is affirmed.
At the time of his arrest on the present charges, Long was serving a thirty year sentence for armed robbery at the Louisiana State Police Barracks Maintenance Program in East Baton Rouge Parish. On June 27, 1976, an article containing a photograph of defendant appeared in the Baton Rouge Sunday Advocate citing Long's status as an inmate and honor student at Southern University. Awaiting approval of his release following a sentence commutation from the Board of Pardons, Long had, at that time, served 8½ years of his original sentence.
As a result of the picture appearing in this article, Baton Rouge City Police received reports of defendant's involvement in at least two armed robberies occurring on May 27, 1976. In the first of these offenses, defendant allegedly placed a gun to the head of Pearlie Lee Babin as she sat in her car parked at a Baton Rouge shopping center. When Mrs. Babin refused to surrender her purse to the assailant, defendant responded by driving off in her automobile. Approximately ½ hour later, defendant allegedly struck again, this time at a maternity shop owned and operated by one Evelyn Randall. Upon entering the store, defendant pulled a gun from his waistband and demanded cash. Defendant then proceeded to empty both the cash register and Ms. Randall's purse before locking Ms. Randall and an employee in the rear of the store and departing. At trial, both victims related the above facts and each positively identified the defendant as their assailant. Ms. Babin's identification was corroborated by Shirley Price, who noticed defendant driving out of the parking lot; Randall's identification was corroborated by Evelyn Erdurum, an employee at the dress shop. Aside from these identifications, the state presented no additional evidence. It is to be noted that the defendant was originally charged with a second robbery at the maternity shop which purportedly occurred on June 4, 1976. However, because defendant's alibi for this date was readily verifiable, these charges were dismissed.

Pro Se Assignments of Error Numbers 1, 4 and 6
These assignments of error deal with alleged improprieties in the admission of identification testimony at defendant's trial.
To verify complaints prompted by the photograph of Long in the Sunday Advocate, the Baton Rouge City Police conducted two lineups. The first, on June 28, 1976, involved all witnesses to the May 27 and June 4 robberies of Evelyn Randall's dress shop as well as witnesses to the June 4 robbery of Mary's Uniform Shop, another Baton Rouge clothing establishment.
*1224 The owner of the Anticipation Dress Shop, Evelyn Randall, and one of her employees, Kathleen Johnson, both identified Long at this first lineup as their assailant. Ms. Randall was present only during the May 27 offense and Ms. Johnson only during the June 4 robbery. Another store employee, Ella Erdurum, who was a witness to both holdups at the Anticipation Dress Shop, was not able to implicate Long until the first preliminary hearing on August 26, 1976.
The second lineup was held on September 2, 1976 and involved witnesses to the May 27 commandeering of Ms. Babin's automobile from the shopping center parking lot. Ms. Babin positively identified Long as her assailant at this lineup. A witness to this offense, Shirley Price, did not identify defendant at this lineup. However, she later confirmed Ms. Babin's identification at a second preliminary examination held on February 27, 1977 wherein she identified Long as the holdup man. At trial, Ms. Price again positively identified Long as the perpetrator and explained her inability to single out defendant during the September 2 lineup. Though Ms. Price clearly observed the accused driving Pearlie Lee Babin's auto and was able to give the police his description, the only physical traits she observed were the assailant's facial characteristics and upper torso. Shirley Price stated that great emphasis was placed upon physical characteristics other than facial features, and that the overall setting at the lineup distracted her. Thus, she felt precluded from identifying defendant at the time of the lineup.
In January 1977, defendant filed a motion to suppress all identifications made during these lineups, alleging that they were conducted under constitutional violations. Though the court minutes reflect that this motion was heard on February 24, 1977, there is no transcript of this hearing in the record. Long alleges that the hearing on this motion was deferred until the date of trial, but was never taken up by the district court.
Long urges that this alleged failure to consider the motion to suppress constituted reversible error. However, even if the accuracy of Long's assertion is accepted, it does not appear that any of Long's substantial rights were violated. This Court previously held in State v. Walker, 260 So.2d 618 (La.1972) that the failure of the trial judge to hear evidence as to defendant's identification on a motion to suppress, instead of at trial, was harmless error and not cause for reversal. In Walker, as in the present case, the question of identification was properly disposed of during trial when the victim made a positive identification.
Further, the main issue to be resolved in the prosecution was the accuracy of defendant's identification by the state's witnesses. As the record shows, the witnesses' opportunities for observation, the accuracy of these observations, and their credibility were all issues which the defendant fully litigated. It was not error for the trial judge to decide that these matters were more properly decided at trial rather than on a motion to suppress. In any event, it did not prejudice the defendant and was a proper exercise of judicial discretion.
Long also contends that the trial court should not have accepted the testimony of those witnesses who viewed the first lineup held on June 28, 1976. He claims that testimony given at the preliminary hearing of August 26, 1976 regarding the robberies of the dress shops, clearly established that the police conducting the lineup suggested to the witnesses which subject to select. Concerning this, defendant relies on the preliminary hearing testimony of Sylvia Singleton, a witness to one of the June 4 robberies in which Long was never more than a suspect:
"I had some questions about my being able to identify the man and I talked to detective Dupuy about that .... There was general conversation during this time but at one point the detective made the statement that the suspect was five eight and weighed two hundred pounds. This immediately disturbed me that we would be given that kind of information before *1225 going in for a line-up. Other conversation was in regard to a newspaper picture. I knew nothing about it. There was some discussion about the man looking like Harry Bellafonte and the detective told us that the suspect did .... I knew immediately who the suspect was because [he was] the only man that looked like Harry Bellafonte."
Further, defendant argues that a comparison of the lineup subjects supports his position that the June 28 lineup was conducted in an unfair manner. This lineup consisted of six participants who, with the exception of the 32-year-old defendant, were all teenagers. Though all of the subjects in the lineup were of similar height, their weight ranged from 160 to 215 pounds. Long also claims that all participants in this lineup were required to wear his eyeglasses, which did not fit anyone other than himself. Defendant urges the disparity in physical appearance created circumstances that were "unnecessarily suggestive and conducive to irreparable mistaken identification" as to deny him due process of law. See State v. Maggio, 368 So.2d 1016 (La.1979); State v. Williams, 341 So.2d 370 (La.1976).
Though Long has presented serious charges regarding suggestive lineup procedures, his present contention actually challenges only the identification testimony of Evelyn Randall, who was the only witness at the June 28 lineup who provided an identification which was ultimately used against the accused. However, Ms. Randall's trial testimony plainly supports the conclusion that her identification of Long at trial was founded on her independent judgment and not based on the June 28 lineup. As noted by this Court in State v. Ross, supra:
"... Therefore, even if the out-of-court identification was tainted, if the in-court identification had a source independent of the out-of-court identification, the in-court identification does not violate defendant's due process rights."
Ms. Randall testified at trial that she first observed the accused as he entered her store on May 27, 1976. Further, she stated that Long lingered about the shop long enough to learn how to open the register, take money from Ms. Randall's purse and then lock the store owner and her employee in a rear room. According to Ms. Randall, defendant was "right up in my face with a gun" during the holdup and her description of Long to the police proved to be entirely accurate.
Defendant's position that the failure of Ms. Price and Ms. Erdurum to identify him at the lineup was grounds to bar their identification testimony at trial is wholly without merit. A pre-trial identification is not a prerequisite to an in-court identification. The failure of these witnesses to single out Long at the pre-trial lineup is a matter that bears on the weight, not the admissibility, of their testimony. State v. Jackson, 337 So.2d 508 (La.1976). Accordingly, these assignments of error lack merit.
Pro Se Assignment of Error Number 2
Defendant contends that the trial court erred when it refused to grant an oral motion for a continuance when certain defense witnesses failed to appear on the day of the trial. This contention is plainly without merit.
C.Cr.P. art. 712 provides that the granting of a motion for a continuance is within the discretion of the trial court. Absent a clear showing of abuse of discretion, the denial of a continuance by the trial judge will not be disturbed. State v. Ordonez, 395 So.2d 778 (La.1981); State v. Lee, 364 So.2d 1024 (La.1976).
Our review of the record fails to reveal that any such motion was ever made. Further, even if a continuance was requested, Long has failed to show any "specific prejudice" caused by the denial of the motion. State v. Jones, 395 So.2d 751 (La. 1981). The problems posed by the absence of these defense witnesses were resolved by stipulations between counsel and by an agreement to submit the preliminary hearing testimony of such witnesses. Accordingly, the defense was not prejudiced by their absence. C.Cr.P. art. 921; State v. Jones, supra.
*1226 Pro Se Assignment of Error Number 5
During the trial, a signed lineup identification card was introduced in evidence by the state during its examination of Detective Louis Dupuy. Though Dupuy was able to identify the identification card, Long argues that this evidence should have been excluded because another witness, Pearlie Babin, testified that she never signed the card and that none of the writing on the card was hers. Defendant's argument is without merit. Once the card was identified by Detective Dupuy, it was properly admitted. State v. Trosclair, 350 So.2d 1164 (La.1977). Once introduced in evidence, connexity was a matter to be determined by the trier of fact. State v. Trosclair, supra.
Further, though Ms. Babin was unable to identify the lineup card nor the writing on the card, she stated unequivocally that she did fill out an identification card at the lineup in which she selected Ulysses Long as her assailant.
Finally, the record reveals that no objection was made when the state attempted to introduce the lineup card in evidence. It is well established that in the absence of a contemporaneous objection, an alleged error in the proceedings cannot be availed of after verdict. C.Cr.P. art. 841; State v. Mitchell, 356 So.2d 974 (La.1978), cert. den. 439 U.S. 926, 99 S.Ct. 310, 58 L.Ed.2d 319 (1978); State v. Williams, 343 So.2d 1026 (La.1977).
Pro Se Assignment of Error Number 7
The accused urges that the trial court erred when it allowed the state to instruct witnesses in answering questions during the preliminary hearing. Appellant's position is based on alleged leading questions and the prosecution's request that a witness respond with a simple "yes" or "no" answer. However, any error by the trial court in permitting questions at the preliminary hearing was rendered moot by Long's subsequent trial and conviction. State v. Stewart, 357 So.2d 1111 (La.1976).
Pro Se Assignment of Error Number 8
At trial, both Ms. Randall and Ms. Babin positively identified Long as their assailant. Pearlie Babin's identification was corroborated by Shirley Price and Evelyn Randall's identification by Ella Erdurum. Aside from these identifications, the state presented no additional evidence. Thus, the trial court's finding of guilt was based entirely upon identification testimony.
By this assignment of error, Long challenges the sufficiency of the state's identification testimony to establish his guilt of the charged offenses.
In presenting his defense, Long sought to challenge the credibility of the state's witnesses by establishing that some of the witnesses present during the two robberies committed on June 4 were mistaken in their identification of defendant, thereby calling into question the credibility of witnesses who were present during the May 27 robberies.
Mr. C. Paul Phelps, then Secretary of the Louisiana Department of Corrections, was a key witness in this defense strategy. Phelps testified that defendant called him on the morning of June 4 and requested an appointment. When defendant arrived, he had to wait for Phelps to conclude an 11:00 appointment. Long eventually entered Phelps' office at approximately 11:30 and spoke with the corrections officer who escorted defendant from the police barracks while Long waited outside Phelps' office. He was returned to the barracks at approximately 1:30. Because of Phelps' testimony, the charges against Long, entailing the June 4 robberies which occurred between 12 noon and 1:00 p. m., were dismissed. Thus, Long urges that he established that Ms. Randall was mistaken in her belief that Long committed the June 4 robbery of her maternity dress shop and that the credibility of Ella Erdurum in regarding her identification testimony was effectively destroyed.
Ms. Erdurum stated unequivocally that the man responsible for the June 4 robbery of the Anticipation Dress Shop was the same man who robbed the store on May 27. *1227 Defendant argues that because he could not have carried out the June 4 offense, Ms. Erdurum's identification of him as the May 27 perpetrator was mistaken.
Further, both Randall and Erdurum testified that they had observed Long in the maternity shop on a previous occasion with a large, heavy set woman who appeared to be pregnant. To refute this identification testimony, defendant relied on the statement of Willie Humphrey, who was arrested on June 8, 1976 in connection with a uniform store holdup in New Orleans. Humphrey testified that he frequently travelled to Baton Rouge to visit his girlfriend, who was pregnant during the Spring of 1976.
Defendant attempted to raise additional doubts about the accuracy of Ms. Randall's identification of him through the testimony of Deatra Nobles, a witness to the June 4 holdup of Mary's Uniform Shop. Ms. Robles testified that Evelyn Randall "got very mad at me and we got into an argument" when she failed to identify Long at the June 28 lineup and that Ms. Randall tried to influence her identification of Long as the perpetrator.
A convicted appellant's attack upon the sufficiency of the state's evidence to prove his guilt is judged by determining whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Harveston, 389 So.2d 63 (La.1980). Thus, under the Jackson rationale, it appears that the state was required to negate any reasonable probability of misidentification in order to carry its burden of proof.
Approximately ½ hour after the commandeering of Ms. Babin's auto, the Anticipation Dress Shop was the object of an armed robbery. Only two individuals, Evelyn Randall and her employee Ella Erdurum, were present when this offense occurred. Both women positively identified Long as the perpetrator. Evelyn Randall was able to clearly observe her assailant, accurately described him to the police, and identified him at the lineup as well as at trial. Ms. Randall forcefully rejected the position of the defendant that Willie Humphrey, the defendant's alleged look-alike, was the holdup man.
Though Deatra Robles testified that Evelyn Randall attempted to sway her identification decision, Ms. Randall repeatedly denied such improper conduct. Thus, the trial judge was faced with conflicting testimony and was required to determine which witness's testimony was more credible. As noted in State v. Collins, 328 So.2d 674 (La.1976):
"Credibility of witnesses is a matter in which the trial judge's discretion is broad, and it is a matter concerning which he is particularly well situated to judge."
Our review of the testimony leads us to conclude that the trial judge did not abuse this broad grant of discretion. Neither Mr. Phelps nor Ms. Robles were present during the May 27 offense. Hence, neither defense witness was competent to testify as to Ms. Randall's ability to observe the defendant's physical traits nor the correctness of the description she supplied to the police. We find it most significant that the shop owner's description not only accurately portrayed the physical characteristics of Ulysses Long, but was totally consistent with the description supplied by Pearlie Babin and Shirley Price, the only two witnesses present at the scene of the offense which occurred earlier that day.
The only other testimony by an eyewitness to the May 27 holdup of Ms. Randall's dress shop came from Ella Erdurum. Ms. Erdurum, who was the only witness present for both the May 27 and June 4 robberies could not identify Ulysses Long at the lineup. Further, she stated at trial that she was positive that the same man robbed the store on both occasions. Defendant urges that because he could not have committed the June 4 offense, Ms. Erdurum's testimony established that he was not responsible for the offense which occurred on May 27.
*1228 However, Ms. Erdurum's testimony indicates that though she misidentified Ulysses Long as the perpetrator on June 4, she was correct in her identification of defendant as the May 27 assailant. First, Ms. Erdurum stated that when Ulysses Long's picture appeared in the Sunday Advocate, she recognized him as the holdup man without being informed or influenced by any other person. Second, she recognized Long as the perpetrator while he waited outside of the courtroom at an earlier hearing, as well as at trial. Third, though the lighting conditions at the lineup prevented Ms. Erdurum from selecting Long, she did give the police an accurate description of Long shortly after the May 27 holdup. Her description was corroborated by all the other witnesses who gave identification testimony concerning the robberies of May 27.
Concerning the robbery of Pearlie Lee Babin, the identification testimony presented by the state conclusively established that Long was the perpetrator. Ms. Babin stated at trial that she was positive that Ulysses Long was her assailant. Further, she testified that she observed the accused as he entered her auto and put a gun to her head before she fled from the vehicle. When Long exited the parking lot in Ms. Babin's auto and attempted to run her down, she again got a clear view of defendant. Afterward, Pearlie Babin gave the police an accurate description of the holdup man, adding that he was very distinct and very neat. During the September 1976 lineup, Ms. Babin positively identified Ulysses Long as her attacker. Further, Shirley Price, a witness to this offense, got a good look at the assailant. Ms. Price stated that as the perpetrator fled in the Babin vehicle, she yelled and he turned to look directly at her. Ms. Price was also able to give the police a description which corroborated Ms. Babin's description. At trial, Ms. Price stated that Ulysses Long had "the face of the person in the car." No evidence was produced by the defense to refute this identification testimony other than the misidentification of Long as the holdup man to the June 4 robbery of the Anticipation Dress Shop. However, we are of the opinion that the misidentification of Long as the perpetrator of another offense by witnesses who were not present when the auto was commandeered does not destroy, nor even lessen, the credibility of the identification testimony given by Ms. Babin and Ms. Price. Consequently, the uncontradicted testimony established without any doubt that Ulysses Long was Ms. Babin's attacker.
Accordingly, we are of the opinion that a review of the evidence in the light most favorable to the prosecution established beyond a reasonable doubt that Ulysses Long was responsible for the attacks upon Pearlie Babin and the Anticipation Dress Shop.

Assignment of Error Number 7
Pro Se Assignment of Error Number 3
By this final assignment of error, Long claims that his attorney's unauthorized decision to opt for a bench trial deprived him of his constitutional right to trial by jury. La. Const.1974, Art. 1, § 17. Defendant alleges that immediately before his trial commenced, his attorney, Nathan Fisher, walked over to the defense table and told Long that "I'm going to waive the jury and go with just the judge." According to Long, he objected vigorously to this decision, but could not prevail upon his counsel. In the presence of the jury venire, the trial court then asked the state and defendant if they were ready to begin trial. At this point, according to the record, Fisher responded, "Your Honor, at this time I think we will waive the jury in this case." Long contends that the absence of such a colloquy between the judge and himself precluded any knowing and voluntary waiver of the right to a jury trial.
Though the trial transcript does not reflect that the trial court, immediately prior to excusing the jury venire, questioned the accused as to whether or not he wished to forego his right to jury trial, this exchange does appear in the court minutes.
"Counsel for the accused then informed the Court that the accused wished to waive his right to trial by jury and elected to be tried by the Court alone. The *1229 Court inquired of the accused if this was his wish and he responded affirmatively."
Taking the minutes as an accurate reflection of what was said in court, the record supports the conclusion that the accused was personally informed by the court of his right to trial by jury before the trial judge accepted this waiver. Further, even if Long did not personally waive his right to jury trial, his claim cannot stand in light of our holding in State v. Phillips, 365 So.2d 1304 (La.1979). In Phillips, defendant's counsel spoke for defendant and waived the right to a jury. This Court found no error there, as the judge informed defendant directly of his right, and defendant had prior experience as an accused in a criminal trial. In the present case, defendant's alleged pretrial discussion with his attorney demonstrated his understanding of the choice between a bench and jury trial. Further, because Mr. Fisher's waiver occurred before the defendant and the prospective jurors, it was logical for the trial judge to assume that Long not only understood his right to jury trial, but that he had given his consent to the waiver made in his presence. See State v. Phillips, supra. Thus, we are of the opinion that defendant made a knowing and voluntary waiver of his right to trial by jury.
Accordingly, the conviction and sentence of Ulysses Long are affirmed.
AFFIRMED.
DENNIS, J., concurs, agreeing that the trial court's actions pertaining to the motion to suppress were not reversible error in a judge trial.
LEMMON, J., concurs and will assign reasons.