456 So.2d 174 (1984)
STATE of Louisiana, Appellee,
v.
Lamar JENKINS, Appellant.
No. 16197-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
Rehearing Denied September 21, 1984.
Writ Denied November 26, 1984.
*177 C. Joseph Roberts, III, West Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, J. Carl Parkerson, Dist. Atty., Michael J. Fontenot, Asst. Dist. Atty., Monroe, for appellee.
Before PRICE, MARVIN and NORRIS, JJ.
NORRIS, Judge.
Defendant, Lamar Jenkins, appeals a jury conviction of attempted aggravated rape in violation of La.R.S. 14:27 and 42 respectively and a resulting sentence of 21 years at hard labor contending that the trial court erred in:
(1) ... failing to allow the defense to question a potential witness, Thomas Roy, concerning the character of the victim-prosecutrix as to general veracity;
(2) ... failing to allow the defense to question a potential witness, Tim Collins, concerning the reputation of the victim-prosecutrix as to chastity where consent was an issue in the case;
(3) ... failing to allow the defense to question the victim-prosecutrix relative to her reputation for chastity where consent was an issue in the case;
(4) ... allowing the prosecution to question defense witnesses, Margaret Wright, Linda Fitch, James Jenkins and Shirley Powell as to whether the same four persons have previously testified in court in favor of Lamar Jenkins;
(5) ... [jury] returning a verdict of guilty to attempted aggravated rape in that the evidence did not support a rational juror in returning such a verdict; [and]
(6) ... imposing a sentence of 21 years imprisonment at hard labor, said sentence being unconstitutionally excessive.

FACTS
During the evening hours of January 6, 1982, defendant, his brother and the victim [his brother's girlfriend], went to the Pyramid Lounge. After the lounge closed, they returned to the apartment of defendant's brother and remained in the apartment together long enough to drink a quart of beer. At approximately 1:15 a.m. on January 7, 1982, defendant left. Thereafter, defendant's brother also left leaving the victim in the apartment alone. A short time later, the defendant knocked on the door of the apartment. The victim dressed and left with the defendant at his urging. When they reached a nearby cemetery, the defendant grabbed the victim, fought with her, threatened to kill her and raped her, first under a tree and then behind a tombstone.
The victim managed to escape, returned to the apartment, cleaned herself up and went to bed. When her boyfriend returned to the apartment later that morning, she told him what had occurred and he called the police.
After interviewing the victim and viewing the scene of the crime, the defendant was arrested at the apartment of his girlfriend where he was found hiding in a closet. He was charged with aggravated rape, tried by a jury, found guilty of attempted aggravated rape and sentenced to 21 years imprisonment at hard labor.

ASSIGNMENT OF ERROR NO. 1
In connection with this assignment, the defendant argues that it was error for the trial judge to disallow a witness to respond to a direct question calling upon the witness to state the reputation of the victim.
*178 Thomas Roy was called to testify on behalf of the defense. During questioning it was brought out that prior to August, 1982 [when he was incarcerated], he had lived in Monroe. He testified that during this time period he had frequented bars on a daily basis and that he "used to see [the victim] regular." He stated that he had heard "some" people discuss her reputation stating that "I have talked with a few people." He stated that the people with whom he had talked were in bars. The state objected on the grounds that no proper foundation had been laid for the witness to answer the question, and the trial judge sustained the objection.
La.R.S. 15:479 defines proof of character:
Character, whether good or bad, depends upon the general reputation that a man has among his neighbors, not what particular persons think of him.
Character testimony has been jurisprudentially defined as the opinion by a member of the community exposed over an extended period of time to hearing the discussion by other members of the community shared by himself and the person whose reputation is at issue. Before being permitted to testify, the reputation witness must be shown to be qualified to testify on the subject as a member of the community in a position to speak with authority on the subject. State v. Deaton, 412 So.2d 586 (La.1982).
One of the requirements for laying a proper foundation to allow the admissibility of such testimony is that the discussion was heard over an extended period of time because the legislative aim of this statute is to restrict evidence of repute to reputation among those who know the person well. State v. Clark, 402 So.2d 684 (La.1981). Proof may be made not only of the reputation of the person where he lives but also of his repute, which is general and established in any substantial community of people among whom he is well known, such as the group with whom he works, does business, or goes to school. State v. Clark, supra.
At best, the testimony of this witness was to the effect that he had known the victim, had frequented bars himself, had seen the victim at bars, and had heard "some" or a "few" unidentified people talk about her reputation without specificity as to whom he had heard talking, how many times he had heard them discussing the victim, over what length of time he had heard these conversations, and how well the people who had discussed her were known to either the victim or this witness. Clearly, this was an insufficient foundation to determine that this evidence of repute was based on reputation of the victim among those who knew her well. Compare State v. Trosclair, 350 So.2d 1164 (La. 1977), where it was held that evidence of reputation among a small group, bar owners, was not admissible.
Moreover, a trial judge is given wide discretion in controlling the examination of witnesses. La.R.S. 15:275. Unless an abuse of this discretion is shown, a conviction will not be reversed. State v. Trosclair, supra. We find no such abuse here and conclude that the trial judge did not err in holding that an insufficient foundation had been laid to admit this testimony.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
This assignment of error contends that the trial court erred in failing to allow the defense to question Tim Collins concerning the reputation of the victim as to chastity. Our review of his testimony initially reveals that the line of questioning pursued by defense counsel with this witness was related to the victim's reputation for truthfulness and honesty and that defense counsel specifically instructed this witness to limit his comments to this subject matter. Although this witness spontaneously and unresponsively answered "Hooker" when defense counsel asked him what was the victim's reputation as to truthfulness and honesty, it is apparent that the line of questioning was not undertaken *179 to establish the victim's reputation for chastity.
Furthermore, defense counsel did not object to any of the rulings of the trial court made in connection with this witness. Accordingly, there is nothing presented in this regard for our review. State v. Herrod, 412 So.2d 564 (La.1982); La.C.Cr.P. Art. 841.
By brief, the defense first argues that the trial court erred in failing to allow the defense to question Collins concerning the reputation of the victim as to general veracity. This contention is likewise without merit as it is clear from the transcript that the witness was in fact allowed to answer a question regarding the victim's reputation for general veracity.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
In connection with this assignment, defendant argues that it was erroneous for the trial judge to refuse to allow him to recall the victim for the purpose of questioning her regarding whether or not she had ever committed acts of prostitution.
La.R.S. 15:498 which is also known as the "rape shield statute" provides:
Evidence of prior sexual conduct and reputation for chastity of a victim of rape or carnal knowledge shall not be admissible except for incidents arising out of the victim's relationship with the accused.
This statute is intended to prevent rape victims from being attacked and impeached on the irrelevant issue of general unchastity. However, only evidence of prior sexual conduct which impeaches a victim's general "reputation for chastity" is excluded by the statute. State v. Langendorfer, 389 So.2d 1271 (La.1980).
Defendant argues that the rationale of the recent case of State v. Vaughn, 448 So.2d 1260 (La.1984) would compel us to conclude that the trial judge's ruling in the instant case was erroneous. We disagree. The Vaughn court stated:
By excluding evidence of a rape complainant's reputation for chastity or sexual conduct with any person other than the accused, La.R.S. 15:498 serves important goals: it abates the victim's ordeal at trial, lessens the possibility of unjust influence by inflammatory evidence and encourages reports of rape. Thus, in balancing the invocation of the shield against the right of confrontation in a particular case, the shield should be given weight according to the degree to which it fulfills the purposes of the rape shield law in that case. Against this in each case must be weighed the extent to which the rape shield would exclude evidence which is genuinely relevant, highly probative and critical to the accused's defense. If the rape shield law in the particular case fails to serve its purpose, overreaches its legitimate aim or trenches upon the right to a fair trial, it must yield to the confrontation guarantees of our state and federal constitutions.
Applying that rationale to the instant case, we conclude that the exclusion of the testimony of the victim promoted the legitimate state interest fostered by the statute. Furthermore, the evidence sought was totally unrelated to the instant offense and therefore immaterial. The victim's prior alleged history of prostitution has no bearing on the issue of consent to this particular encounter. The defendant has made no showing nor has he even made an allegation that the sexual encounter which he had with this victim was in connection with any act of prostitution. In fact, the defense was based on the premise that he had formerly had a relationship with this victim during which they had consensually engaged in sexual relations on numerous occasions and that she had consensually engaged in an act of sex with the defendant on the date in question. Consequently, there has been no showing made that the victim's reputation or activities (if any) as a prostitute were of any particular relevance and necessary to ensure him a fair trial. See also and compare State v. Dawson, 392 So.2d 445 (La.1981); State v. Gatson, 434 So.2d 1315 (La.App.3d Cir.1983). Finally, *180 there is a distinct possibility that such evidence would have unjustly influenced the jury in its verdict by its inflammatory nature.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
The next assignment presented for our review in this case is the propriety of the state's attempting to impeach the credibility of four witnesses and to show their bias, interest and corruption by asking of each if they had previously testified for the defendant at a previous trial.
Defense witness, Margaret Wright, a sister of the defendant, was asked on cross examination if she, and three other named witnesses had not all testified before in a case. Defense counsel objected, and the trial judge instructed the prosecutor to restate the question. The prosecutor then asked:
Q. In another case have you not all testified before on the same subject?
Defense counsel again objected, and this objection was overruled. Next asked was:
Q. And was that subject an alibi subject? Did you provide an alibi for a defendant?
Defense counsel objected to the materiality of the question and the jury was removed.
During the extended colloquy which followed, the state argued that it had the right to ask the witnesses if they had testified together before to show that they would "get together again" in this case. However, the prosecutor stated that he was not attempting to question the validity of their earlier testimony but was attempting to point out that they had said the same thing. It was argued that the bias or interest toward each other in giving the same testimony in this case, that is, the same testimony for this defendant in this case was the relevance of this line of questioning. Defense counsel argued that these four witnesses had admittedly testified for this defendant in a prior criminal case in which he had been acquitted and that the state was attempting through the guise of bias, interest and corruption to indirectly cast doubt on the witnesses because they had testified for him before and that jury had believed their testimony. The position of the defense was that because the defendant had been acquitted in the former case it was a closed subject. Finally, it was contended by the defense that unless it could be established that the four witnesses had lied in the earlier proceeding, there was no relevance in this line of questioning.
The trial judge sustained the objection to the question regarding the alibi. Thereafter, the trial judge allowed the prosecutor to ask each of the four witnesses if they had ever testified in a prior proceeding for this defendant together finding that such a question was material and relevant to a substantial issue in dispute, that is, the credibility of the testimony of these witnesses, and that such questioning was not unduly prejudicial.
On appeal, defendant argues that the fact that the same witnesses had previously testified for this defendant without more establishes nothing that has any relationship to any material issue or fact in this prosecution and does not establish that these four witnesses had any special interest in the outcome of the case nor does it show any particular bias or corruption. It is further argued that the real purpose of this questioning was to prejudice the defendant before the jury by suggesting that the witnesses were fabricating testimony and had done so before and that in fact this particular method of questioning was a "backdoor" method of placing into evidence prohibited evidence of other crimes to the prejudice of the defendant.
Generally, the state may impeach the testimony and credibility of defense witnesses as to all relevant matters. La.R.S. 15:486 and 494. However, where the inquiry bears upon an accused's past criminal record, relevancy is not the sole limiting criterion and regard must be had also for the substantial risk of prejudice to the defendant which might result from adverting to his prior misdeeds. The inherent danger in admitting evidence of prior crimes is that the jury will convict a defendant *181 solely because he has been shown to be a bad man. State v. Ervin, 340 So.2d 1379 (La.1976). However, evidence of the defendant's prior crimes may be admitted when it has a relevancy independent of establishing his criminal disposition. Whenever the other crimes evidence is relevant for some purpose other than to show that the accused is a bad man and thus more likely to have committed the crime with which he is charged, the rule of exclusion is inapplicable, and the evidence is admissible if its probative value outweighs its possible prejudicial effect. State v. Ervin, supra.
The prosecutor's cross examination of these witnesses was not for the purpose of impeaching the witnesses' or the defendant's general credibility under La.R.S. 15:495 but the focus of the questioning was to establish that these particular witnesses had testified in court for this particular defendant before and were appearing in court again in his behalf to provide him with a defense to this criminal charge thereby tending to show their bias, interest or corruption.
La.R.S. 15:492 provides:
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same.
Our jurisprudence permits full cross-examination of any witness in order to expose any bias or interest which may influence his perceptions or color his testimony. The broad right to impeach a witness for bias, interest or corruption is dictated not only by La.R.S. 15:492 but also by the statutory right to full cross-examination. La.R.S. 15:280; State v. Kellogg, 350 So.2d 656 (La.1977). Thus, an accepted method of impeaching a defense witness is by showing that the witness is biased or interested in the special case on trial because of partiality or of any acts, relationships, or motives reasonably likely to produce such partiality. State v. Robinson, 337 So.2d 1168 (La.1976). See also McCormick on Evidence, § 40 (2d Ed.1972); Pugh, Louisiana Evidence Law 111-134 (1974). Accordingly, when cross-examination is not within the prohibition of La.R.S. 15:495 because it is independently relevant to show particular bias, interest or corruption in the special case before the court, it is permissible impeachment under La.R.S. 15:492, which recognizes another and a different basis of impeachment from that of La.R.S. 15:495. See State v. Robinson, supra.
In State v. Foster, 153 La. 154, 95 So. 536 (1923), the reviewing court was faced with the issue of the propriety of the prosecutor's asking the mother of the accused, a defense witness, on cross examination if she had not formerly appeared in several cases in which the defendant had been indicted and tried and if she had not testified to an alibi in each case. Defense counsel objected to this line of questioning on the ground that the questions were not asked to attack the credibility of the witness but rather for the purpose of placing before the jury the fact that the accused had been tried numerous times before the court thereby constituting an attempt to attack the defendant's character. The testimony was admitted by the trial court for the purpose of showing that the witness had been a professional alibi witness for him in every case in which he had been indicted and tried. The reviewing court held that the testimony was clearly admissible for the purpose for which it was elicited.
The fact that a witness has testified earlier in support of a criminal defense set forth by a defendant may have a tendency to weaken his testimony in a subsequent case. It tends to show the close familiarity existing between the parties and therefore bears upon the interest and credibility of the witness. Consequently, it is an element which the jury may take into consideration in weighing the testimony of such a witness. See and compare State v. Lynch, 176 Wash. 349, 29 P.2d 393 (1934), a case in which it was held proper for the *182 prosecutor to interrogate defendant's witnesses on cross examination as to whether they had not testified for the defendant in support of an alibi in a former criminal action.
While Foster and Lynch provide authority for upholding an even stronger line of questioning than that complained of in the instant case, including the initial question asked by the prosecutor which was precluded by the trial judge, we need not reach that precise issue here because the instant factual situation is dissimilar. While we as the reviewing court are aware from the record that the prosecutor was referring to a prior criminal proceeding when pursuing this line of questioning, at the time, the jury was not made so aware because the questions actually allowed by the trial judge do not specifically refer to a prior criminal proceeding but only to a trial, which was not identified as being criminal in nature. Therefore, we will not presume that the jury interpreted these questions as being evidence of "other crimes" or even an attempt by the prosecutor to enter the dangerous area of "other crimes" evidence at this point. Furthermore, La. R.S. 15:492 specifically provides that any fact which tends to show bias, interest or corruption should be admitted so that the jury may accord that fact the weight it deems appropriate. The fact that this group of witnesses had testified for this particular defendant in a prior court proceeding at the least tends to show their particular bias, interest or corruption in favor of the defendant. Therefore, it was evidence which the jury was entitled to consider in weighing the testimony of these witnesses and the trial judge properly allowed this line of questioning under La. R.S. 15:492.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
In this assignment, the defendant argues that the jury erred in returning a verdict of guilty of attempted aggravated rape because the evidence did not support a rational juror's returning such a verdict. In effect, the defendant, who claims that the act of sexual intercourse which he engaged in with the defendant was consensual, asks that we evaluate the credibility of the witnesses and overturn the trier of fact on its factual determination of guilt. This is not the function of the court on appeal. See State v. Richardson, 425 So.2d 1228 (La.1983); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984); State v. Wilkerson, 448 So.2d 1355 (La.App. 2d Cir.1984). Because it is the role of the fact finder to weigh the respective credibilities of the witnesses, an appellate court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson v. Virginia standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Williams, supra; State v. Wilkerson, supra.
Evidence is sufficient to support a conviction when any rational trier of fact in viewing the evidence in the light most favorable to the prosecution, could have concluded that the essential elements of the crime were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Defendant was originally charged with aggravated rape. La.R.S. 14:42 provides:
Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
(4) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.

*183 Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
La.R.S. 14:27 provides:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows:
(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than fifty years;
(2) If the offense so attempted is theft or receiving stolen things, and is not punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned for not more than six months, or both. If the offense so attempted is theft or receiving stolen things, and is punishable as a felony, he shall be fined not more than two hundred dollars, or imprisoned not more than one year, or both;
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine of imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term if imprisonment prescribed for the offense so attempted, or both.
Accordingly, in order to support the verdict, the evidence viewed in the light most favorable to the prosecution in this case must show that the defendant actively desired to commit the rape which he at least attempted by overcoming the victim's utmost resistance by force, or by preventing the victim from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution.
The victim testified that at approximately 3:00 a.m. on January 7, 1982 in cold, rainy weather, she was raped by defendant in a graveyard. She stated that she had earlier been to the Pyramid Lounge with her boyfriend and the defendant to drink beer. All of them left the lounge at the time it closed and returned to her boyfriend's apartment where they drank another quart of beer. After the defendant left the apartment, the mother of a child of the victim's boyfriend came to the apartment, and he also left with her leaving the victim alone. Thereafter, the victim heard a knock at the door and the defendant told her that her boyfriend was surrounded by the police on Grammont Street by the cemetery. She dressed and left with the defendant to go to the scene of the reported incident. When they arrived at that location, she saw no police and turned around to leave. The defendant informed her that she was going nowhere and began pulling her by the waist throwing her to the ground on the side of a gravel road. After the defendant got the victim on the ground, he told her that if she did not engage in sexual intercourse with him he would kill her. He had his hands on her neck choking her while she was attempting to fight him off. The defendant pulled down the victim's jeans and tore off her underpants. He raped her initially under a tree. Thereafter, he continued to beat the victim and drug her on her back behind a tombstone *184 where he raped her again. Throughout, the defendant was yelling at the victim telling her that he was going to kill her. He hit her with his fist and bit her on the jaw. In attempting to fight off the defendant, the victim bit him and scratched him on the knee. Thereafter, the victim managed to escape and to return to the apartment where she attempted to clean herself up and went to bed. The defendant returned to the apartment and attempted to talk to the victim.
When the victim's boyfriend returned home later that morning, she related the preceding events to him and he called the police. After interviewing the victim at approximately 11:00 a.m., the detectives from the Monroe Police Department went to the alleged location of the rape and found torn underwear and a scarf torn in two pieces. The officers also observed bent grass in the area which indicated a scuffle had taken place. The victim was observed to have several bruises and a bite mark. She was taken to E.A. Conway Hospital for examination. The defendant was later found at the home of his girlfriend hiding in a closet where he was arrested.
The testimony of the examining physician was that she had observed a bruise on the victim's left cheekbone which was swollen, a swollen bruise between the eyes, and a bruise on her right cheek which appeared to be a bite mark. She also observed scratches on the upper lip, right wrist and lower back, as well as red marks and parallel scratches on the victim's neck. Scrapings were taken from her fingernails and dried grass was removed from the victim's pubic hair. Motile and non motile sperm were found.
The defendant also testified. He stated that he had known the victim for four or five years and that he had dated her intermittently between 1979 and 1982 during which they had engaged in consensual acts of sex. His testimony is substantially similar to that of the victim until his departure from the apartment. He testified that he left the apartment at 1:15 a.m. and went to the Disco Lounge of the Elite where he stayed approximately 45 minutes. He then returned to the apartment and the victim answered the door. Thereafter, he and the victim engaged in an act of consensual sexual intercourse. The victim asked him if he had any money with which to purchase liquor and together they left the apartment to go to a bootlegger's on Grammont. As they started across the graveyard, he reached in his pocket to obtain money to purchase the liquor and found none. He asked the victim if she had taken the money from his pocket when he left the apartment without his pants after intercourse to clean himself up, and they began arguing and fighting. Blows were exchanged and she fell to the ground. When the victim said that she would give him his money, the fight ceased and she unzipped her jeans reaching into them. When he saw something in her underpants, he reached for them causing them to tear. He retrieved his money and left the victim in the graveyard. By cab, he returned to his girlfriend's.
On cross examination, he denied dragging the victim anywhere but admitted that he had hit her and bitten her on the cheek. He also denied grabbing her about the neck. Despite the fact that his pants and jacket had mud on them, he denied ever hitting or kneeling on the ground. He also denied that the police had found him hiding in the closet.
The victim's underpants were muddy as were the pants and jacket recovered from the defendant. The underpants were torn as was the scarf which the victim identified as the one she was wearing at the time of the rape.
Viewing the evidence under the appropriate standard, the evidence is sufficient to support the jury's finding. Defendant's argument that a finding of attempted aggravated rape lends support to an inference that a rape did not in fact occur is meritless. Attempted aggravated rape is a responsive verdict to the crime charged. An accused may be found guilty of an attempt to commit a crime although it appears on the trial that the crime intended or attempted *185 was actually perpetrated. La.R.S. 14:27. An equally plausible explanation for the verdict actually returned in this case is the fact that it was a compromise verdict or the fact that the jury may not have wanted to expose this defendant to life imprisonment for this particular crime. In essence, the finder of fact made a credibility determination in favor of the victim and against the defendant. There is sufficient testimony, if believed, to support the jury's finding.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 6
Defendant finally argues that the 21 year sentence is excessive, out of proportion to the crime actually committed, and amounts to an unnecessary imposition of pain and suffering, thereby rendering it constitutionally excessive.
Article I, § 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment. Although a sentence is within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to review. State v. Sepulvado, 367 So.2d 762 (La.1979). In imposing sentence, a trial judge must comply with the mandatory requirements of La.C.Cr.P. Art. 894.1 and individualize the sentence by stating for the record the considerations taken into account and the factual bases therefor. State v. Jones, 381 So.2d 416 (La.1980). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Article 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant [State v. Hammonds, 434 So.2d 452 (La.App.2d Cir. 1983)] because the sentencing guidelines of Article 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983); State v. Sepulvado, supra. It is unnecessary that the trial judge list every aggravating and mitigating circumstance that he considered if the record reflects that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Vaughn, 378 So.2d 905 (La.1979).
In the instant case, the trial judge initially noted that he had reviewed the defendant's pre-sentence investigation report with defense counsel and proceeded to review some of its contents with the defendant. The trial court noted that the defendant was 23 years old, single and the father of one child. It was further noted that other than juvenile offenses of shoplifting, damage to property, three charges of misdemeanor theft, there were no adult convictions. It was further noted by the trial judge that although the defendant continued to deny this offense, that the evidence was sufficient in the trial judge's mind to justify the verdict. The trial judge further stated that he had considered all of the mitigating factors noted in Article 894.1 and concluded that the crime threatened as well as caused serious harm to the victim, that the defendant did not act under strong provocation, and that there were no substantial grounds which justified this criminal conduct. Additionally, the trial judge found that the victim neither induced nor facilitated in the commission of the crime. The trial judge noted that if the defendant had been found to have had a history of violent crimes that the sentence actually imposed would have been much greater because, the fact that there was no substantial criminal background was a factor which weighed in the defendant's favor. However, the trial judge concluded that based on defendant's background it was likely that this criminal conduct was a result of circumstances that were likely to recur. The trial judge noted the defendant's poor employment history and lack of direction and the fact that this defendant had also been on juvenile probation which did not deter him from committing criminal acts. The trial judge also concluded that there would be no substantial hardship which would result to his dependent should he be imprisoned. Finally, the court concluded that there was an undue risk that during a period of suspended sentence or *186 probation defendant would commit another crime, that defendant was in need of correctional treatment provided most effectively by committment to an institution and that a lesser sentence would deprecate the seriousness of the crime. It was also noted that attempted aggravated rape is an extremely serious offense. In light of all the foregoing factors, the court sentenced the defendant to 21 years at hard labor.
We conclude that the trial court adequately complied with Article 894.1. While a sentence may be vacated and a case remanded for re-sentencing when the reasons for an apparently severe sentence in relation to the particular offender and the actual offense committed do not appear in the record, a sentence should not be set aside as excessive in the absence of a clear abuse of the wide discretion accorded a trial judge in the imposition of sentences within statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983).
This sentence is within the lower one half of the range of sentences provided. Furthermore, the jury could have convicted the defendant of aggravated rape. A court cannot ignore the underlying circumstances of the crime and still individualize the sentence. State v. Day, 414 So.2d 349 (La.1982). Accordingly, given the circumstances of the instant crime and the factors enumerated by the trial judge, we find no abuse of discretion in his imposition of this sentence.
This assignment of error is without merit.
Accordingly, for the foregoing reasons, the conviction and sentence of the defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.