504 So.2d 124 (1987)
STATE of Louisiana, Appellee,
v.
Paul BURNS, Appellant.
No. 18588-KW.
Court of Appeal of Louisiana, Second Circuit.
February 25, 1987.
Writ Denied May 8, 1987.
*128 John Milkovich, Shreveport, for appellant.
Powell A. Layton, Jr. and Tommy Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before FRED W. JONES, HALL and SEXTON, JJ.
FRED W. JONES, Jr., Judge.
Following a bench trial the defendant Burns was convicted of possession of marijuana (R.S. 40:966) and sentenced to serve six months in jail. We granted a writ to review the defendant's conviction. He argues for reversal on the basis of 19 assignments of error.
Many of the salient facts were sharply contested at trial. Agent Mark Holley of the Shreveport Police Narcotics Division testified that he was working in an undercover capacity on August 14, 1985. Agent Holley, who was outfitted with an electronic transmitter, went to the parking lot of Byrd High School in Shreveport at the corner of Gladstone and Line, accompanied by another police officer, Marshall Johnson. The officers were met there by a confidential informant, whose identity was later revealed as Billy Fontenot. Agent Holley inquired of Fontenot the location of the subject from whom he was to buy marijuana and learned that the individual was Paul Burns, parked across the street in a green Volvo. Fontenot got into Holley's car and the three men drove across the street alongside Burns' vehicle. Agent Holley noted that there were two other individuals, a white female and a small child in the back seat, in Burns' car besides Burns. Holley, Johnson, and Fontenot exited Holley's automobile, walked to the side of Burns' car and greeted him. According to Agent Holley's testimony, Burns said "I told you I didn't want to meet anybody. I'll drive around the corner." Burns then drove southbound through the parking lot toward Stephenson Street, out of the officer's vision.
At Agent Holley's instruction, Fontenot walked to Burns' car to discern what the problem was. Fontenot returned to the *129 officer with a paper sack that contained a plastic bag of marijuana. Agent Holley then gave Fontenot five $20 bills and watched Fontenot cross the street in the same direction that Burns had driven. Holley then instructed surveillance officers to arrest Burns.
Agent Mark McCauley was in an unmarked patrol car located at the intersection of Line Avenue and Stephenson with Agent Larry Simon. Officer McCauley received the electronic transmission from Agent Holley that the confidential informant had been given $100.00 with which to purchase marijuana from the subject in the dark green Volvo. Thereafter, McCauley moved his car to an area where he could see Fontenot walk to the car and make the exchange. Officer McCauley observed the confidential informant approach the vehicle, stand there for a second, and walk away as the police were driving toward the car. Although Officer McCauley testified that he could see the confidential informant standing at the vehicle, he could not see if the confidential informant reached in the window because of "the way it was set up." As Fontenot walked away from Burns' vehicle, Officer McCauley drove his vehicle to the rear of the Volvo while another undercover car driven by Sergeant Miller blocked the defendant from the front.
The officers identified themselves and instructed defendant to exit the car. In the process, several bills, later determined to be five $20 bills, fell to the ground out of Paul Burns' lap. At that point, the defendant was frisked, advised of his rights, and arrested for distribution of marijuana.
Following the arrest of Paul Burns, it was determined that the green Volvo was registered in the name of Teresa Burns, his wife, who was present at the scene. Teresa Burns then signed a consent to search form.
Sergeant Jack Miller conducted the search of the car. He found small plastic sandwich baggies similar to those used to package the marijuana recovered in the purchase, scales capable of weighing items up to one ounce, and a tray which was part of the scale. Additionally, in a briefcase in the car, Sergeant Miller found a piece of paper containing figures indicative of sums paid for varying amounts of marijuana. Other items of paperwork were also recovered from the briefcase located in the car. However, the nature of these items was not explored at trial.
Lieutenant Milton McGrew of the Shreveport Police Department testified that he examined the items of physical evidence for fingerprints and found smudges on the baggie, but did not find enough points for a fingerprint identification.
The defense version of events differs substantially in several respects from the version presented by the prosecution. Teresa Burns, Paul Burns' wife, testified that Bryan Fontenot, the brother of Billy Fontenot, the confidential informant, telephoned the Burns' residence several times the day before the arrest and additionally on the morning of the arrest. She stated that her husband did not return these calls. However, on the day of the arrest, the couple, accompanied by their five year old child, Nathan, left Bossier City about 7:15 A.M. and went by the place where Bryan Fontenot and Paul Burns worked. Paul Burns was a construction foreman, and Bryan Fontenot worked as a laborer under his supervision. The construction site was near the parking lot of Byrd High School. After ascertaining that Bryan was not at the construction site, the Burns decided to go to the Fontenot's home, which was the fourth or fifth house down from the parking lot on Stephenson. However, before the couple got to the Fontenot's house, they saw a person standing in the parking lot. Thinking it was Bryan Fontenot, they approached the individual and learned that it was Billy Fontenot, his brother.
Paul Burns asked Billy where Bryan was. Billy told him that Bryan was on his way and was with friends. The couple waited five or ten minutes. A black or dark blue Mustang was driven up and parked in the Byrd High School parking lot. According to Teresa Burns, Billy said "that is probably him," and walked over to *130 the car. Billy got in the car and drove back over to them.
Paul Burns testified that when the car drove up, a man and a girl with a headband got out of the car. The defendant stated that the girl looked like "she came back from time in the 1970's or something like that." After Billy got out of the car, the defendant testified that he expressed his confusion to Billy because he did not understand what was going on since Bryan was not in the car and he did not know the people getting out of the car. Therefore, he informed Billy that he was going to Billy's house, around the corner on Stephenson Street.
Thereafter, according to the defendant's testimony, he drove around the corner as Billy approached him. The defendant asked him where Bryan was because he wanted to see him immediately. He also asked why he had driven up in the company of the individuals in the car. The defendant stated that Billy went into his house and came out and said that Bryan was not in the house but that he would go get him. Burns testified that Billy went back around the corner toward the Glenwood Theater again, returning a short time later and informing the defendant that Bryan was not around. As the defendant began to drive away, his car was surrounded by police officers with their weapons drawn and aimed at the heads of the occupants of the Burns' vehicle.
Teresa Burns' testimony was basically consistent with that of Paul Burns, except she testified that the arrest occurred immediately after Billy went into the house to check to see if Bryan was there, and returned to the car.

ASSIGNMENT OF ERROR NO. 1:
In this assignment of error defendant challenges the sufficiency of the evidence adduced by the prosecution to convict him of possession of marijuana.
Recently, this Court reiterated the proper appellate review standard for sufficiency of evidence claims in State v. McFadden, 476 So.2d 413 (La.App. 2d Cir.1985), writ denied 480 So.2d 739 (La.1986):
"LRS 15:438 is an evidentiary guide for the jury and a tool or methodology for the reviewing court to employ in determining whether the rational juror in the Jackson v. Virginia constitutional due process test might have concluded that defendant's alternative hypothesis of innocence is sufficiently unreasonable to conclude that the evidence proved guilt beyond a reasonable doubt. State v. Chism, supra [436 So.2d 464]; State v. Wright, 445 So.2d 1198 (La.1984); State v. Captville, 448 So.2d 676 (La.1984).
The test, whether expressed in terms of doubt or of hypothesis, is the reasonableness of the ultimate conclusion on the facts and inferences which may be drawn from those facts in the particular case. Compare State v. Shapiro, 431 So.2d 372 (La. 1982), and State v. Rault, 445 So.2d 1203 (La.1984). In some cases, "the defendant's circumstantial theory [or hypothesis] is [found to be] remote [or unreasonable] ..." when it is compared "... with the prosecution's hypothesis of defendant's guilt, which is consistent overall with the evidence." State v. Graham, 422 So.2d 123, 130 (La.1982)."
The main thrust of defendant's sufficiency claim is that no prosecution witness saw Paul Burns in possession of marijuana. Additionally, defendant argues that the confidential informant, Billy Fontenot, had the opportunity when he was out of view of the police surveillance vehicles to retreat into his home on Stephenson Street and retrieve the marijuana which was later turned over to police. As a consequence, he contends that a reasonable hypothesis of innocence was not negated by the prosecution's case against him. As additional support for this position defendant notes that the confidential informant was not searched prior to the transaction and was not outfitted with an electronic transmission device. Moreover, he asserts that the prosecution's case contained "serious gaps, omissions and anomalies," and notes with particularity the absence of the testimony of the confidential informant, Billy Fontenot.
*131 Viewing the evidence in the light most favorable to the prosecution, as this Court is mandated to do by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), it must be emphasized that initially it was intended that Officer Mark Holley make the drug purchase. Therefore, he was equipped with the electronic transmitter. Since the confidential informant was not originally intended to be involved in the transfer of contraband there was apparently no need to search him. Additionally, the testimony of the confidential informant was not brought forth at trial because the sheriff was unsuccessful in serving him with a subpoena. It was later determined that he was out-of-state for an indeterminate period of time. Therefore, the transaction was reconstructed through the testimony of the officers who made the purchase and the surveillance officers.
Officer Holley testified that the defendant stated "I told you I didn't want to meet anybody ...". Since defendant exhibited this reluctance to deal with the officers, it was determined that the confidential informant should make the purchase. Officer Holley testified that if the confidential informant had been given a full body search at that point the defendant might have seen it and the transaction may have been endangered. Likewise, the officer stated that the procedure involved in removing the transmitter from his person and wiring the confidential informant may also have been seen by the defendant. Holley also testified that the tape was for the most part inaudible and contained only the officers' voices, and not the actual drug purchase.
Additionally, defendant underscores the fact that the "alleged drug money", consisting of five $20 bills which allegedly fell out of defendant's lap as he was arrested, was never introduced at trial, and it is unclear whether the serial numbers of these bills were ever preserved. However, the State, on rebuttal, produced a voucher showing that $20 was paid to Billy Fontenot for his assistance in the matter. A cash-out slip showing that $155 was checked out of the police department safe by Mark Holley was also introduced. Holley testified that of the $155, $100 was used in the purchase and returned to the safe for re-use in other narcotics transactions, $20 went for payment of the confidential informant, and the remaining $35 was also returned to the safe. Defendant also argues that the court violated the best evidence rule in allowing testimony about the money at trial. This argument is separately considered in assignment of error number 7.
In light of the prosecution witnesses' explanation of these "gaps, omissions and evidentiary anomalies," it appears that the most crucial evidence is the testimony of the police officers with respect to the period which elapsed from the time the confidential informant left Agent Holley's vehicle to the time he got to the defendant's vehicle. The court, in oral reasons for judgment, found that Fontenot did not go to a house but went, instead, straight from vehicle to vehicle.
Officer Holley testified that from the time he assumed his position next to Burns' car until the time the transaction was completed only about five minutes elapsed. The officer testified that, after Burns drove away, probably less than a minute elapsed before Fontenot went to see what the problem was and returned. Additionally, Officer Holley testified that, from the time he received the marijuana to the time he gave the money to the confidential informant, only ten to fifteen seconds elapsed. From the time he received the money for the marijuana, less than a minute and onehalf later the defendant was approached.
The time that elapsed during the transaction could be found by a rational trier of fact to have negated the hypothesis that the confidential informant entered his house and obtained marijuana during the purchase. Additionally, the recovery of the money in the defendant's lap in the denominations sent by the police, and the location of the scales and baggies of a similar kind as that used to package the marijuana received by Agent Holley, support the conviction for possession of marijuana.
This assignment is without merit.

*132 ASSIGNMENT OF ERROR NO. 2:
The defendant complains that the trial court erred in failing to grant a continuance based upon the absence of a witness.
At the beginning of the trial, counsel for the defendant sounded the courtroom for the witnesses subpoenaed in the matter. Upon his discovery that Billy Fontenot, the confidential informant, was not present, defense counsel orally moved for a continuance. Counsel for the defendant stated for the record that he had spoken directly with Fontenot on the telephone and that Fontenot had revealed to him that Paul Burns never distributed marijuana to him. Counsel explained that Fontenot told him that the police put pressure on him to try to turn in a drug dealer in order to obtain beneficial resolution of certain drug charges pending against him. Defense counsel further explained that the witness was timely subpoenaed, sixteen days prior to trial. The prosecution opposed the motion for continuance, noting that the State had also subpoenaed Fontenot, but was ready to proceed in his absence. The prosecutor stated he understood Fontenot was in Florida.
Following arguments the court denied the continuance, noting that the return of the subpoena indicated it had never been served.
La.C.Cr.P. Art. 709 provides the requisites for a motion for continuance based on the absence of a witness:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
However, La.C.Cr.P. Art. 707 provides that a motion for a continuance shall be in writing:
A motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. It shall be filed at least seven days prior to the commencement of trial.
Upon written motion at any time and after contradictory hearing, the court may grant a continuance, but only upon a showing that such motion is in the interest of justice.
Art. 707 has been strictly construed by the Louisiana jurisprudence. A motion for continuance must be in writing and must allege the specific grounds upon which it is based. Where no written motion for continuance appears on record, the denial thereof will not be considered. State v. Robicheaux, 412 So.2d 1313 (La. 1982); State v. Jones, 340 So.2d 563 (La. 1976). However, the Louisiana Supreme Court has made an exception to this rule when the grounds for a continuance arose unexpectedly and the defense had no opportunity to prepare a written motion. State v. Washington, 407 So.2d 1138 (La. 1982); State v. Parsley, 369 So.2d 1292 (La.1979); State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983), writ denied 442 So.2d 460 (La.1983).
In State v. Washington, supra, defendant made an oral motion for continuance due to the absence of an essential witness prior to the commencement of the hearing on a motion for new trial. The absent witness allegedly had recanted his trial testimony, causing the defendant to seek a new trial. The witness did not appear at the hearing on the motion and defense counsel did not discover until the time of the hearing that the sheriff had been unsuccessful in serving the witness with the subpoena. Under these circumstances, the Supreme Court held that the occurrence that made the continuance necessary arose unexpectedly and that the defense had no opportunity to prepare a written motion. Therefore, the court's ruling denying the motion for continuance was properly before the Court for review.
*133 In State v. Clark, supra, the motion for continuance was made orally on the day of the trial prior to the swearing of the first witness after it was discovered that a witness had not been located and served with a subpoena. Under those circumstances, this Court concluded that it was appropriate for the trial court to consider an oral motion.
No element of surprise can be gleaned from this record. Counsel had issued subpoenas fourteen days in advance of trial. Had he checked the subpoena returns prior to trial, he should have known that the sheriff could not serve the subpoena and could have tailored his actions accordingly, either by reissuing the subpoenas, or by filing a written motion for continuance alleging the appropriate grounds.
Even if the instant motion fell within the ambit of the Washington-Clark exception, La.C.Cr.P. Art. 709 also requires that a motion for continuance based on the absence of a witness set forth facts showing due diligence used in an effort to procure the attendance of the witness. Therefore, the failure to check subpoena returns prior to trial is a lack of due diligence.
In State v. Clark, supra, the Court noted that the subpoenas were issued four days prior to trial, listing no specific address but "General Delivery" in two different towns and two different parishes. As previously stated, these circumstances were found to constitute unexpected circumstances which made an oral motion of continuance appropriate. However, these circumstances were found not to constitute due diligence under Art. 709(3).
Thus, if the facts of this case fell within the exception to the rule that motions for continuance must be in writing, it appears that the grounds alleged were insufficient to sustain a motion for continuance. Failure to check the subpoena returns prior to trial constitutes a lack of diligence on the part of counsel to procure the attendance of witnesses at trial. Additionally, defendant advanced no reasonable probability that the witness would be available at a deferred time. Defendant's counsel strenuously asserted that the witness was a minor and therefore could only be absent from the State periodically and would eventually return to his parents' home. This reasoning is speculative at best and certainly did not give rise to a reasonable probability of appearance by the witness at trial at a future date.
Defendant further argues that he was denied his constitutional rights to confront the witnesses against him and to compel the attendance of witnesses on his behalf by the denial of the continuance. In State v. Clark, supra, this Court succinctly dispensed with a similar defense contention:
"Defendant additionally contends that La.C.Cr.P. Art. 709 is unconstitutional as applied to this case because it operates to deny him the right to compulsory process. The right to compulsory process is the right to demand subpoenas for witnesses and the right to have them served. State v. Mizell, 341 So.2d 385 (La.1976). It is a right which is embodied both in the federal and state constitutions as well as the statutory law of this state. U.S. Const. Amend. 6; La. Const. Art. 1, § 16 (1974); La.C.Cr.P. Art. 731. The constitutional right to compulsory process for the attendance of witnesses is not to be trifled with and must be enforced. State v. Mizell, supra; State v. Bickham, 208 La. 1026, 24 So.2d 65 (1945). However, the right to compulsory process to obtain the attendance of witnesses is predicated on the exercise of due diligence by the defendant. State v. Hattaway, 180 La. 12, 156 So. 159 (1934). It is incumbent upon the defendant to set forth facts which show due diligence. State v. Doty, 158 La. 842, 104 So. 736 (1925). Applying the aforementioned principles in pari materia, we conclude that this article is not unconstitutional nor is it unconstitutionally applied to this defendant. The requirement that the defendant meet the criteria of Article 709 does not deprive him of any constitutional rights and the criteria enumerated serve a rational and logical purpose. As *134 stated in State v. Lockett, 332 So.2d 443 (La.1976): The Articles of the Code referred to above [La.C.Cr.P. Arts. 707, 708, and 709] are not platitudes. Unless the standards set out there are adhered to, the trial of cases will be unduly and unexpectedly delayed, and the handling of court dockets will be hampered. When the Code's standards are complied with, however, the defendant is protected and there is little likelihood of prejudice to his case."
Therefore, the constitutionality of this provision has been previously upheld by this Court. Moreover, even if the circumstances giving rise to the continuance are classified as unexpected and an oral motion for continuance was proper, the grounds set forth in Art. 709 were not satisfied. No abuse of discretion was shown on the part of the trial court in his refusal to grant the continuance.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3:
The defendant complains that the trial court erroneously excluded a tape-recorded telephone conversation with defense counsel, in which defense counsel contends the confidential informant admitted that Paul Burns had not distributed marijuana to him.
Initially, during the hearing on the motion for a continuance, the defendant mentioned the existence of the tape. However, there was apparently no attempt to introduce it into evidence at that point. Later, counsel for the defendant made an attempt to introduce the tape into evidence. Counsel argued that the judge had previously admitted into evidence over his objection a tape recording between the police officers which was admitted as part of the res gestae of the crime. Therefore, he argued that since the State's tape was admitted into evidence, the defense tape should be admitted as well. The trial court ruled that there was "no legal basis whatsoever for doing that" and denied his request.
Defendant argues that the statements should have been admissible as a statement against interest, an exception to the hearsay rule. An analysis as to whether the statement was properly admissible under this exception to the hearsay rule can be pretermitted. Defendant did not articulate that objection to the trial court and a new basis for an objection cannot be raised for the first time on appeal. See State v. Cressy, 440 So.2d 141 (La. 1983). This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4:
Defendant claims the trial court erred in denying both his motion to suppress and his supplemental motion to suppress. In these motions, the defendant asserted that the warrantless search of the automobile was unreasonable as there was no reasonable suspicion to stop the car. The arrest was, consequently, illegal and the police did not obtain valid consent to search the automobile. Defendant argues that Teresa Burns' consent was the product of illegal coercion, intimidation, threats, and of her highly fearful and agitated state of mind.
Unreasonable searches and seizures are prohibited by both the Fourth Amendment to the United States Constitution and La. Const. 1974 Art. 1, § 5. A search conducted without a warrant issued upon probable cause is per se unreasonable, subject only to a few specifically established and well delineated exceptions. State v. Bourgeois, 388 So.2d 359 (La.1980); State v. Taylor, 468 So.2d 617 (La.App. 2d Cir. 1985); Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). However, a search conducted with a subject's consent is a specifically established exception to both the warrant and probable cause requirements. State v. Wilson, 467 So.2d 503 (La.1985) cert. denied ___ U.S. ___, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985); State v. Ludwig, 423 So.2d 1073 (La.1982); State v. Murphy, 465 So.2d 811 (La.App. 2d Cir.1985). When the State seeks to rely upon consent to justify the lawfulness of a search, it has the burden of proving that consent was given freely and voluntarily by a person who possessed common authority or other sufficient relationship with the premises or effects *135 sought to be searched. Voluntariness is a question of fact to be determined by the trial judge from a review of the totality of the circumstances. Factual determinations of the trial judge are entitled to great weight upon appellate review. State v. Ossey, 446 So.2d 280 (La.1984), cert denied 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Brown, 478 So.2d 600 (La. App. 2d Cir.1985); State v. Helsley, 457 So.2d 707 (La.App. 2d Cir.1984).
An analysis of the legality of the detention would normally not be necessary in evaluating consent to search since consent to search is an exception to the probable cause requirement. However, when the consent is given after an illegal detention or search, the consent to search, even if voluntary, is valid only if it was the product of free will and not the result of an exploitation of the previous illegality. Among the factors considered in determining whether the consent was sufficiently attenuated from the unlawful conduct to be the product of a free will, are whether the police officers adequately informed the individual that he need not comply with the request, the temporal proximity of the illegality and the consent, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. State v. Raheem, 464 So.2d 293 (La.1985); State v. Owen, 453 So.2d 1202 (La.1984).
The defendant asserts that his original detention was illegal; therefore, he argues that the consent to search was inadequately attenuated from the original illegal detention to be valid.
An arrest occurs when the circumstances indicate an intent to effect an extended restraint of the liberty of the accused, rather than a precise time an officer tells an accused he is under arrest. See La.C.Cr.P. Art. 201; State v. Tomasetti, 381 So.2d 420 (La.1980). In this case the officers stopped the green Volvo with their weapons drawn and trained on the occupants, and placed the defendant in handcuffs. Clearly, an arrest of the defendant was effected at that point. Consequently, the appropriate inquiry is not whether there was reasonable suspicion to stop the defendant, but rather whether there was probable cause for his arrest.
Probable cause to arrest without a warrant exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Raheem, supra. Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Tomasetti, supra.
In the instant case, the officers sent the confidential informant to the defendant's car with police department funds. The confidential informant was seen to approach the vehicle by the surveillance officers. Subsequently, within a very short time the confidential informant returned to the car with a package of marijuana. The facts and circumstances known to these arresting officers, based on their reasonably trustworthy information received by virtue of their having viewed the situation, clearly established probable cause to arrest the defendant. Having thus concluded that the arrest was valid, the attenuation factor is not relevant under these circumstances. The pivotal question is whether the consent was freely and voluntarily obtained.
In support of his contention that the consent was coerced, defendant notes with particularity the fact that four grown male police officers armed with weapons emerged from their vehicles, trained their weapons on the Burns family and surrounded the Burns' car. Defendant argues that the five year old child, Nathan, was visibly upset because his parents were separated from each other and from him. Defendant alleges that Teresa Burns was not allowed to join her son until she signed the written consent. Defendant also argues that Mrs. Burns was suffering from "shock induced vaginal bleeding." Teresa Burns testified at trial that she was asked where *136 she worked before she signed the consent form. She stated that the police threatened her, telling her that if she did not cooperate she could lose her job and the custody of her son. Mrs. Burns stated she was told that if she did not give written consent the police would obtain a warrant anyway. Defendant's wife testified that the police threatened to impound her car and asserted she was never informed of her right to refuse the search.
Agent Mark McCauley testified that Teresa Burns, who was registered owner of the car, signed the consent form in the presence of himself, Officer Simon, Officer Scott and Officer Miller. State Exhibit 6 was explained at trial to be a standard consent-to-search form used by the Shreveport Police Department. The officer testified that after running a registration check and determining that Mrs. Burns was the owner of the car, he read the form to Mrs. Burns in its entirety. The form was signed as witnessed by Agent McCauley and Agent Simon. Agent McCauley testified that there were no force, threats, or intimidation made against Mrs. Burns in order to obtain her signature on the document. Additionally, the officer testified that the defendant was not under the influence of any fear, duress or intimidation at any time to secure her signature. He also stated that there were no inducements or promises made to Teresa Burns. According to the officer's testimony, Mrs. Burns did not ask any questions about any words on the form and did not indicate that she did not understand what the form was about. The officer noticed that Mrs. Burns did not appear to be under the influence of any drug or intoxicant, she was conscious the entire time of the exchange, she never said she was in pain or in need of any medication, and never indicated that she had any mental or intellectual disability, nor did the officer notice any mental or intellectual disability. The officer also testified that following the arrest, he asked Mrs. Burns if she and her child were all right. He did not recall discussing with her the arrangements that would be made to take care of her child in the event that she was arrested. Officer McCauley specifically denied telling Mrs. Burns that if she did not cooperate, her son could be taken away from her and given to the State and that she herself could be arrested. He also specifically denied informing Mrs. Burns that if she did not cooperate, she might lose her job with the State.
Officer McCauley noticed that Mrs. Burns appeared emotionally stable and in control of her faculties. He specifically recalled no physical symptoms of nervousness or upset, although she did appear concerned for her child. He noted that Mrs. Burns kept checking on the well-being of the child by reaching into the back of the car. The officer remembered that the little boy was crying but that the mother was not. McCauley stated that the mother was allowed to take the boy from the car before she signed the consent to search form. The officer stated that "the child appeared very upset and the mother asked to take the child out to comfort him and we allowed her to do that."
The testimony of Agent Larry Simon was consistent with that of Agent McCauley's in that there were no menaces, threats, inducements or promises made to Teresa Burns in order to obtain her signature on the consent to search form. His recollection as to her capacity to consent, including her intellectual capacity and the other factors attested to by Agent McCauley, was also consistent with his testimony. He also concurred with the statement that no one threatened the child, or threatened Mrs. Burns about what would happen to the child or her husband if she did not sign the form. Agent Simon did, however, recall that the child was not removed from the car until after the consent to search was signed. The officer noticed that the child was crying but that once he saw that there was no harm, his mother was able to calm him. Agent Simon testified that he spoke with the child in order to reassure him that the police were not "bad guys" trying to hurt anyone. However, the officer was emphatic that he did not question the little boy. This officer recalled that Mrs. Burns appeared to be nervous and concerned about the child. Agent Simon *137 also stated that he believed Mrs. Burns was crying. The officer heard no discussion about any type of custodial arrangements which may have had to be made for the child. Additionally, the officer heard no one questioning or discussing with Mrs. Burns what might happen to her job should she decline to sign the form.
Officer Jack Miller testified that Mrs. Burns was upset during the time that the consent to search was signed but he did not particularly recall her crying, although she exhibited signs of nervousness. As he recalled the events of that night, the child remained in the car, and the mother and the officers were standing by the passenger door of the vehicle.
The totality of the circumstances surrounding the giving of the consent to search reflects that Mrs. Burns was emotionally distraught at the time the consent was given, a condition which was inevitable considering that her husband had just been arrested by armed police officers who surrounded the Burns' vehicle with their weapons drawn. Her five year old child witnessed these events and was frightened and upset. However, the record clearly demonstrates that the mother was in close proximity to the child prior to being able to remove him from the car and could apparently reach the child in the back seat in order to comfort him.
Although defense counsel alleges that Mrs. Burns was so emotionally distraught that she suffered "shock induced vaginal bleeding," the record contains no medical evidence to support this contention, but merely reflects that she started her menstrual period at the time of the arrest.
The trial court properly analyzed the totality of the circumstances in concluding that Mrs. Burns' consent was freely and voluntarily given. Implicit in the trial court's finding of guilt of the possession of marijuana charge is a rejection of the trial testimony of Teresa Burns, who testified that her husband never sold drugs to Billy Fontenot. The court's factual finding in this regard is entitled to great weight. Moreover, although the circumstances which surrounded the giving of this consent necessarily created a stressful situation, the evidence does not support a finding that Mrs. Burns was so emotionally or physically affected by the circumstances surrounding the search as would vitiate her consent to the search of the automobile.
Furthermore, the search was also lawful as a search incident to an arrest. U.S. v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982) held that police officers, who have legitimately stopped an automobile and who have probable cause to believe contraband is concealed somewhere within it, may conduct a warrantless search of the vehicle that is as thorough as a magistrate could authorize by warrant. The scope of a warrantless search is noted:
"The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab."
See, also State v. Morace, 446 So.2d 1274 (La.App. 2d Cir.1984).
Thus, since the officers had probable cause to believe the contraband was hidden inside the vehicle, Ross would have authorized a search of the vehicle as well as any container in the vehicle which could contain marijuana. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 5:
Defendant contends the trial court erred in precluding a defense witness, Kathy Lee, from testifying as to a statement made to her by Teresa Burns while Teresa was in an extremely agitated state. Defendant asserts that this statement should *138 have been admitted as an excited utterance, an exception to the general rule that hearsay is inadmissible.
The nature of the excited utterance exception to the hearsay rule was explained in State v. Henderson, 362 So.2d 1358 (La. 1978) as follows:
"One of the traditional common law hearsay exceptions recognized by this Court is the exception for certain statements made under the influence of a startling event. Formulations of the exception differ, but all courts agree on two basic requirements. There must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Smith, supra; see, C. McCormick, Evidence, § 297 at 704 (2d ed. 1972).
Many factors enter into determining whether in fact the second requirement has been fulfilled and whether a declarant was at the time of an offered statement under the influence of an exciting event. Probably the most important of these is the time factor.
In this connection the trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. Several additional factors which may indicate that the statement was the result of reflective thought, but which do not automatically justify exclusion, are as follows: Evidence that the statement was self-serving or made in response to an inquiry; Expansion of the excited utterance beyond a description of the exciting event into past facts or the future; Proof that the declarant performed tasks requiring reflective thought processes between the event and the statement. See, State v. Smith, 285 So.2d 240 (La.1973); C. McCormick, Evidence, § 297 at 705, et seq. (2d ed. 1972); G. Pugh, Louisiana Evidence Law, at 515 (1974), at 208 (Supp.1976); Comment, Excited Utterances and Present Sense Impressions as Exceptions to the Hearsay Rule in Louisiana, 29 La.L.Rev. 661 (1969)."
When the criteria of Henderson are applied to the instant set of facts, the circumstances surrounding the giving of the instant statement clearly do not qualify it as an excited utterance. Defendant states that the time frame within which the statement was made was "within an hour or two of her husband's arrest." The record reflects Teresa Burns testified that after the arrest she drove back to the theater parking lot, straightened her car up, smoked a cigarette and "settled down a little bit," until police officers came and told her that she had to leave because that was a "bad" area. After she left the theater parking lot Teresa Burns went to a Kathy Lee's house in Bossier City. Upon seeing Mrs. Lee, Teresa Burns made the statement which forms the basis of this assignment of error.
The actions of the witness indicate that the interval between the arrest and the statement was long enough to permit a subsidence of emotional upset and a restoration of her reflective thought processes. In fact, her statement that she "settled down a little bit" indicates that she had calmed herself somewhat before driving to her friend's home. Moreover, the very act of driving is a task which requires reflective thought processes, and that act intervened between the startling occurrence and her utterance.
Notwithstanding, it appears that the testimony sought to be introduced in conjunction with Kathy Lee's testimony was received into evidence through the testimony of Teresa Burns.
"Q. Did you have any conversation with Kathy when you got there?
A. Some. Short, she had heard that he had been arrested and I told her yes that he had been arrested but I didn't know what for, that they had told me they had got him on distribution, which I knew wasn't right and I told her it wasn't right. She asked how Paul was, she asked how I was and I told her I was all right, it was Nathan that *139 I was worried about. Nathan was upset. He wouldn't talk. He wouldn't talk to me. He wouldn't talk to nobody."
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6:
Defendant complains that the trial court erred in precluding him from presenting evidence that two witnesses for the prosecution, Officer Jack Miller and Officer Mark McCauley, had a reputation for dishonesty and untruthfulness.
At trial, the defendant attempted to adduce testimony from Giddens, of the Indigent Defender's Office, as to the reputation of the officers in the community. On an attempt to establish a foundation for the admission of this testimony, defense counsel asked Giddens the basis of his knowledge. The following colloquy transpired:
"A. Well, it would be based upon my representation of various people charged with narcotic offenses. Just overall, due to that representation and due to my knowledge of the way he has testified and the way he has conducted himself in the handling of various drug cases which I have represented clients on. It's also based on what I have learned from talking to other members of the legal community.
Q. When you say other members of the legal community are you talking about stenographers, secretaries, attorneys?
A. It would be attorneys.
Q. Sir, based upon your knowledge of or your conversations with other members of the ShreveportNow, when I say legal community are you referring to members of the Shreveport Bar?
A. Yes."
Following an objection by the prosecution, which was sustained, the court ruled that an insufficient foundation for the introduction of the testimony had been established. Therefore, the trial court precluded the witness from testifying as to the reputation for honesty and truthfulness of these officers.
In a proffer of proof filed with the record, defense counsel avers that, if attorney Giddens had been allowed to testify, he would have stated that he had been a criminal defense attorney in Caddo Parish for some five years, and was aware of the reputation for honesty of the chief prosecution witnesses, Shreveport Police Department Officers Mark McCauley and Jack Miller. The proffer states that Giddens had handled approximately 100 drug cases in which the prosecution witnesses were involved as investigators. The document states that Giddens was familiar with the reputation for honesty of Officers Miller and McCauley among numerous members of the Shreveport Bar Association, past and present clients, and the witnesses who have been involved in drug cases handled by Giddens. Based on that knowledge, the filing states that Giddens would testify that Officers Miller and McCauley had a reputation for dishonesty and untruthfulness among the aforementioned members of the community.
In State v. Trosclair, 350 So.2d 1164 (La.1977), the Louisiana Supreme Court reiterated the following standard relative to the impeachment of a witness:
"In State v. Corbin, La. 285 So.2d 234 (1973), [sic] we discussed impeachment of a witness premised upon his reputation in a specific, limited group. Therein we stated: `This is not permissible. Credibility of a witness may be attacked generally, by showing that his general reputation for truth or moral character is bad. La.R.S. 15:490. The inquiry, however, must be limited to general reputation, and cannot go into particular acts, vices or courses of conduct. La.R.S. 15:491. What is called for in such cases is the opinion of the community, and not the witness. It is elementary that the individual opinion of the impeaching witness is not admissible, either as a basis for his estimate of the truth and veracity of the witness sought to be discredited, or as proof of the general reputation of the witness whose credibility is attacked. State v. Foster, 153 La. 154, 95 So. 536 (1923). As the trial judge observed, `reputation is not established by an inquiry *140 as to a person's standing within a certain segment or circle of the population but can be established only by reputation in the community at large.'"
Notwithstanding, defendant cites with reliance State v. Clark, 402 So.2d 684 (La. 1981) which construed the limitation of place contained within La.R.S. 15:479 as follows:
"The object of this limitation of place is to restrict evidence of repute, to reputation among the people who know the person best. However, a literal interpretation of the rule is no longer appropriate in this country today, where a person may be little known in the suburb or city neighborhood where he lives, but well known in another locality where he spends his work days or in several localities where he does business from time to time. Thus, today it is generally agreed that proof may be made not only of the reputation of the person where he lives, but also of his repute, as long as it is `general' and established, in any substantial community of people among whom he is well known, such as the group with whom he works, does business or goes to school. McCormick, supra, §§ 44, 191; 5 Wigmore, Evidence, § 1616 at 591 (Chadbourne Rev.1974) ...
Our statutory formulation, which limits general reputation evidence to `that a man has among his neighbors' is somewhat more expansible than the traditional rule. We think the legislative aim was to restrict evidence of repute to reputation among those who know the person well, and that it should be interpreted in accordance with the above stated general agreed upon modern American view."
In Clark, the Supreme Court concluded that, although defendant was a resident of Red River Parish, he testified he worked for his employer in Natchitoches Parish for three years immediately preceding the offense. Therefore, the trial court did not abuse its discretion in finding that Natchitoches Parish was a substantial community of people among whom the defendant was well known, meeting the statutory standard.
This court addressed the sufficiency of the foundation laid for testimony sought to be adduced to show the character of the victim in State v. Jenkins, 456 So.2d 174 (La.App. 2d Cir.1984), writ denied 460 So.2d 1043 (La.1984). In Jenkins, the testimony of the witness to the effect that he had known the victim, had frequented bars himself, had seen the victim at bars, and had heard "some" or a "few" unidentified people talk about her reputation without specificity as to whom he had heard talking, how many times he had heard them discussing the victim, over what length of time he had heard these conversations, and how well the people who had discussed her were known to either the victim or this witness, was held to be clearly an insufficient foundation for determination that this evidence of repute was based on a reputation of the victim among those who knew her well. Additionally, in Jenkins, this Court noted and relied upon La.R.S. 15:275, which provides that a trial judge is given wide discretion in controlling the examination of witnesses, and determined that no abuse of discretion had occurred in precluding this testimony.
Construed most favorably to the defendant, the testimony of Giddens established that he knew of the reputation for truthfulness and veracity in the community of the two police officers only through his contacts with members of the defense bar, those accused of drug related offenses, and witnesses on their behalf. The segment of the community from which Giddens drew his opinion is clearly not a substantial segment of the community for purposes of knowledge of general repute. A proper foundation for admission of this testimony was not laid and the trial court correctly refused to allow further questioning of this witness. Moreover, the trial court did not abuse its wide discretion in controlling the examination of this witness by holding that an insufficient foundation had been laid to admit the testimony. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 7:
Defendant asserts that the trial court erred in failing to require the State to *141 produce the best evidence of the money used in the drug transactionthe bills themselves, or the serial numbers of the money.
La.R.S. 15:436, requiring the production of the best evidence within a party's control, is to be applied sensibly and with reason. State v. Gaskin, 412 So.2d 1007 (La. 1982); State v. Johnson, 480 So.2d 878 (La.App. 2d Cir.1985). Additionally, absent a showing of prejudice, a conviction will not be reversed on the ground that the best evidence was not produced. State v. Gaskin, supra; State v. Bennett, 341 So.2d 847 (La.1976).
Mark Holley testified that, except for the $20 paid to the confidential informant, the rest of the drug money was returned to the police department safe for use in other transactions. Therefore, it is clear that the money was unavailable for introduction into evidence. Officer McCauley testified that there may have been a police department oversight in not recording the serial numbers of the money when it was brought back to the police department. Thus, the serial numbers were apparently not available for trial.
Since the best evidence rule is required to be applied sensibly and with reason, introduction of the money itself or the serial numbers was unnecessary. Moreover, defendant demonstrates no prejudice from the failure of this evidence to be produced. The officers clearly could testify as to their observation of the money at the scene and their credibility as to this testimony was judged by the trial court. Consequently, this assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 8:
Defendant contends the trial court committed prejudicial error by allowing the State to go beyond the scope of defendant's closing argument in its rebuttal argument.
La.C.Cr.P. Art. 774 requires that the State's rebuttal shall be confined to answering the argument of the defendant. If the argument goes beyond the scope of the article, it falls within the ambit of La.C.Cr.P. Arts. 770 and 771, which provide the grounds for mistrial. See La.C. Cr.P. Art. 774 Comment (c); State v. Morris, 404 So.2d 1186 (La.1981); State v. Jackson, 452 So.2d 1225 (La.App. 2d Cir. 1984). In order for argument outside the scope of Art. 774 to be reversible, the reviewing court must be fully convinced that the jury was influenced by the complained of remarks and that they contributed to the verdict. State v. Morris, supra. The prosecutor may be given some latitude to use argument outside the scope of Art. 774 to refute defense argument of like character. State v. Morris, supra.
In this case, defendant complains the trial court erred by allowing the State to present rebuttal arguments on the statement allegedly made by the defendant in Mark Holley's presence to the effect that "I don't want to meet anyone." The prosecutor then stated "Now why else would he have said that except he was committing a crime."
Initially, it should be noted that following the prosecutor's reference to this statement defense counsel objected but did not make a motion for mistrial, which is the appropriate action under Art. 774.
Additionally, the prosecutor not only mentioned this statement in rebuttal to the defense counsel's closing argument, but had originally mentioned this statement during the first portion of his closing argument. Moreover, the main thrust of the defense counsel's closing argument was that the defendant was totally innocent of the charges against him. The statement quoted by the prosecutor in the rebuttal to the defense counsel's closing statement was an appropriate response to the defense argument, and was made in a bench trial rather than before a jury. For these reasons, the instant assignment is nonmeritorious.

ASSIGNMENT OF ERROR NO. 9:
Defendant asserts that the State inadequately complied with defendant's discovery motion in that it failed to give sufficient notice of the existence of an oral statement intended for use at trial.
*142 Defendant specifically requested notice of an intent to use any confession or statement of any nature from the district attorney's office. In response to defendant's request, the State informed the defendant that there was a tape recording of the transaction, and referred the defendant to certain police reports attached to the supplemental motion for discovery. The police report attached to the discovery response was prepared by Agent Holley. The report states that "... the white male states to the CI 113 that he (Paul) did not want to meet any new people. Agent Holley replies that they were here now. The white male stated that he was going to drive around the corner."
Although the defendant admits in brief that the statement was included in the police report, defendant argues that the State's discovery response did not state an "other than custodial" statement was contained in the police report.
La.C.Cr.P. Art. 716 regulates discovery of statements made by defendant, as follows:
A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney.
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer.
The purpose of the discovery article giving defendant sufficient notice of the inculpatory statement that the State intends to use is to permit the defendant a fair opportunity to meet the issue. State v. Jackson, 450 So.2d 621 (La.1984).
We do not understand defendant's complaint with respect to the response filed by the district attorney's office to his motion for discovery. The defendant was given a response which indicated not only the contents of the statement but the circumstances around which it was taken, the time, and the person to whom it was made. Clearly, the State did not have to inform the defendant of the contents of the oral statement made as the statement was not given in response to interrogation by any person known to the defendant to be a law enforcement officer. See La.C.Cr.P. Art. 716(B) and (C). The circumstances described in the discovery response clearly indicate that the statement was made in a noncustodial environment. The State gave adequate notice of the existence of the statement, and its intent to use the statement at trial. The purpose of the statute requiring discovery of statements made by defendant as set forth above was not thwarted by this discovery response. This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 10:
Defendant alleges that the trial court committed prejudicial error by ordering three witnesses to leave the stand during defense counsel's examination of them.
Defendant specifically complains of three instances in which his examination of witnesses was foreclosed. The first occurred during the direct examination of the witness, William Giddens. Throughout the testimony of Giddens, defense counsel sought to establish that the reputation of certain officers who testified on the behalf of the prosecution for honesty and truthfulness was not good. (See assignment of *143 error number 6). An objection as to improper foundation was sustained. The court explained to the defense counsel that the witness could not testify about the police officers' reputations for honesty, but if defense counsel had another area that he wished to question the witness about he should continue with that questioning, or the witness could leave the stand. Defense counsel continued to argue with the court as to the propriety of the ruling. The trial court then asked the witness to step down.
The second instance of foreclosure of testimony occurred as defense counsel was questioning Officer Mark McCauley during the defense's case-in-chief. In this exchange, defense counsel attempted to elicit statements that the officer made in his police report so that defense counsel could be furnished with a copy of the police report for impeachment purposes. Following the prosecutor's objection, the trial court ruled that since the witness had been called by the defendant as his witness in his casein-chief, no attempt to impeach him could be made under the rules of evidence. The following colloquy transpired between the court and defense counsel:
THE COURT:
"Do you want to ask this witness anymore questions, sir?
BY MR. MILKOVICH:
Q. What did you say in your police report about the recovery of the five $20 bills?
MR. LAYTON:
Objection, same objection.
MR. MILKOVICH:
Q. What is the objection to that question, it's not leading?
THE COURT:
Well, in reality you put the witness on trying to impeach him and he's now your witness. So, what you're really doing is trying to impeach your own witness and you're also going over testimony that the witness has already given other than about the police report and the police report is trying to impeach him, so the whole area is really improper.
MR. MILKOVICH:
Again, I'm going to ask my question you're precluding me from asking him what his police report says about how he recovered and where he recovered the money?
THE COURT:
That's correct.
MR. MILKOVICH:
And the basis for your ruling is what, again, I didn't quite understand it.
THE COURT:
I don't think I have to repeat that for you.
MR. MILKOVICH:
I object.
BY MR. MILKOVICH:
Q. What does your police report say about
THE COURT:
You ask that one more time and you are going to go upstairs to the jail because you are going to be in contempt, Mr. Milkovich.
MR. MILKOVICH:
I object to Your Honor's ruling. I object to your threat. You're trying to intimidate me out of representing my client. You're depriving us of presenting a defense. You're denying us the right to exploit inconsistency between the police report and Officer McCauley. If it's Your Honor's ruling that I cannot ask this officer any further questions about the case, I ask that you please do so in *144 the clearest possible terms so that I can make my objection without me being left in uncertainty about whether if I ask a certain question, I'll be held in contempt.
THE COURT:
I'm trying to keep from restricting you, but so far the
MR. MILKOVICH:
Would you please make a clear ruling about
THE COURT:
Step down, Officer McCauley, Mr. Milkovich obviously does not want to ask you any more questions about this case that comply with the rules of the Court and the evidence. (Witness Excused)
MR. MILKOVICH:
I object to Your Honor's ruling. I do want to ask him questions about
THE COURT:
Well, when I said I wasn't trying to restrict you, you flopped into your chair with one of the wildest moves that you've made during the trial. So, I consider that you are so far out of line that we're not going to get anywhere with this witness."
Defense counsel was again precluded from further questioning a witness in the course of the examination of Officer Jack Miller. During testimony of that witness, immediately prior to the witness being asked to leave the stand, five prosecution objections were sustained on the basis that defense counsel was exceeding the scope of the rebuttal evidence presented by the State. Before the last objection was sustained, the trial court warned defense counsel that if he asked another question outside the scope of proper rebuttal, the court would order the witness to step down. Parenthetically, it should be noted that the defendant complains specifically as to the propriety of the ruling sustaining the first objection, treated separately as assignment of error number 17, but does not specifically complain as to the remaining four objections.
La.R.S. 15:275 grants the trial court discretion with respect to the control of the examination of witnesses in his courtroom:
In the discipline of his court, the trial judge is vested with a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness, whether such examination be direct or cross, and even though no objection be urged by counsel.
The trial judge is vested with sound discretion to stop the unnecessary examination of witnesses and his ruling will not be disturbed unless an abuse of discretion is shown. State v. Naas, 409 So.2d 535 (La. 1981), U.S. cert. denied, 457 U.S. 1119, 102 S.Ct. 2933, 73 L.Ed.2d 1332. The right to cross-examine is a principal means by which the believability of a witness and the truth of his testimony are tested; but the right is always subject to the broad discretion of the trial judge to preclude repetitive and unduly harassing interrogation. State v. Russell, 434 So.2d 460 (La.App. 2d Cir. 1983), writ den. 438 So.2d 1112 (La.1983).
In each instance complained of by the defendant the trial court afforded defense counsel the opportunity to present testimony from these witnesses within the bounds of the rules of evidence. In each instance, defense counsel returned to an area which had previously been the subject of a sustained prosecution objection. On two of the three occasions, defense counsel was specifically warned to refrain from asking the questions posed, with the threat of having the witness dismissed from the stand. Considering these facts, the trial court did not abuse its discretion in dismissing these witnesses from the stand. Furthermore, defendant established no specific prejudice resulting from these rulings. See State v. Senegal, 316 So.2d 124 (La. 1975).
Support for this result can be obtained from the recent decision of In Re Milkovich, 493 So.2d 1186 (La.1986). In reviewing a contempt citation against defense *145 counsel, the court noted that twice during the quoted questioning of the witness, the judge warned counsel about being repetitive and threatened to curtail or terminate the questioning of that witness. "When relator continued to revert to repetitious questions or to repeating answers, the appropriate procedure for the judge was to limit or end the examination." Therefore, the trial court did not abuse its discretion in terminating the questioning of these three witnesses. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 11:
Defendant complains the trial court erred in permitting the State to present rebuttal evidence on the motion to suppress.
The evidence with respect to the motion to suppress was not taken separately but was presented at trial. Defendant complains specifically of the overruling of his objection following a question posed to Officer Jack Miller during his examination by the prosecutor on rebuttal. The prosecutor asked Officer Miller if, pursuant to the search of the green Volvo, he or anyone in his presence told Teresa Burns she would be placed under arrest if she did not cooperate or sign a consent to search. The defendant objected, arguing that in terms of rebuttal the question was repetitious in that the prosecution had already presented the consent portion of their case previously. He argues that, having failed to adduce the evidence in its case-in-chief, the State should not have been allowed to cure any deficiency in its case.
Generally, in the trial of criminal prosecutions, the State must put its whole case in evidence in its presentation-in-chief, and rebuttal evidence should be reserved to meet the evidence adduced by the defense. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983). It is entirely within the discretion of the trial court to allow rebuttal testimony after defendant's presentation of evidence. La.C.Cr.P. Art. 765; State v. Prosper, 455 So.2d 673 (La.App. 4th Cir.1984).
During the defense case-in-chief, Teresa Burns testified that she consented to the search of her automobile because "he [the police officer] told me he was taking me in." The testimony adduced from Officer Miller was apparently an attempt to rebut this evidence. The prosecution did not exceed the proper scope of rebuttal in offering this testimony to contradict an element raised by the defense. Moreover, the officers who testified in the State's case-inchief testified consistently with the evidence brought forth on rebuttal. Hence, the evidence was only cumulative. The trial court did not abuse its wide discretion in allowing this testimony. This assignment is without merit.

ASSIGNMENT OF ERROR NOS. 12, 14, 18:
In Assignment Number 18 defendant alleges that the trial court erred in precluding the defense from questioning police officers about the contents of their police reports. Defendant contends the trial court's ruling controverted his right to cross-examine an adverse witness about probative matters and unconstitutionally prohibited defendant from revealing exculpatory evidence.
Defendant specifically complains of two instances in which he was precluded from eliciting information from police officers as to their police reports. During the defense case-in-chief, the defense called Agent Mark McCauley on direct examination. In the course of exchange defense counsel asked for a "verbal description" of how much the police officer relied upon his police report in testifying. The police officer testified that he relied on the police report 25-30% in his testimony. Defense counsel then asked the witness whether his statement about finding five $20 bills on the street was in the police report prepared on the offense. The prosecutor objected, arguing that the question was leading. The trial court sustained the objection. Following the posing of an identical question by the defense counsel, the prosecutor objected again, arguing that defense counsel was trying to impeach his own witness. Defense *146 counsel argued that the witness was an adverse witness who had testified in contradiction to his police report and he should be allowed to exploit that inconsistency. The court ruled that there was no inconsistency except in the mind of defense counsel.
Each side has the right to impeach the testimony and the credibility of every witness sworn on behalf of the other side. La.R.S. 15:486. The correlative rule is that no one can impeach his own witness, unless he has been taken by surprise by the testimony of such witness, or unless the witness shows hostility towards him. Even then the impeachment must be limited to evidence of prior contradictory statements. La.R.S. 15:487.
Once a witness has been examined and cross-examined as a State witness, the right of the defendant to recall the witness in the presentation of his defense is subject to the limitation that the recall places the witness in the position as though he had never been called before in the case. He then becomes the defense's witness. State v. West, 437 So.2d 256 (La.1983). Hence, the defendant could not impeach the credibility of McCauley absent a showing of surprise or hostility. La.R.S. 15:487 and 15:488. Although hostility is not defined by the statute, the Supreme Court has suggested that hostility turns on a showing that the interest of the witness is on the side of the opposite parties to such an extent that he or she is unlikely to give a true account of the transaction. State v. West, supra. Hostility has also been shown where the witness gives evasive and contradictory answers. State v. Edwards, 419 So.2d 881 (La.1982); State v. Bradford, 367 So.2d 745 (La.1978).
In State v. Vessel, 435 So.2d 1124 (La.App. 1st Cir.1983), the court determined that since testimony of a witness was the same as both a defense and a State witness, the defendant did not establish the requisite showing of surprise or hostility necessary for the impeachment of that witness. Likewise, Officer McCauley testified consistently as both a State and a defense witness. It is illogical to suggest that any time a police officer is called in the defense case-in-chief the requisite showing of hostility has been made. Moreover, defense counsel had the opportunity during his cross-examination of the witness during the State's case-in-chief to establish a foundation for a prior inconsistent statement which may have been contained in the police report. He failed to take advantage of that opportunity, and he cannot complain of the trial court's preclusion of that testimony at an inappropriate time.
Furthermore, in State v. Latin, 412 So.2d 1357 (La.1982), the Supreme Court explained that the State is not required to produce police reports of a testifying officer unless (1) the officer has physical possession of the report on the stand and testifies from it; State v. Perkins, 310 So.2d 591 (La.1978); or (2) the officers testified exclusively from his past recollection recorded even though the officer does not have physical possession of the report on the stand. State v. Tauzier, 397 So.2d 494 (La.1981); State v. Banks, 341 So.2d 394 (La.1976); and (3) it is established that there is an inconsistency between the officer's testimony at trial and his report. State v. Carter, 363 So.2d 893 (La.1978).
The testimony clearly indicated that Agent McCauley was relying on his memory refreshed by his report to the extent of 25-30%. He did not have physical possession of his report when he testified nor did defense counsel establish a showing that the officer's testimony differed from his report. Additionally, the trial court made an in camera inspection of the report and found no inconsistency. Accordingly, the report would have been properly withheld from defense inspection unless defense counsel had established on cross-examination an inconsistency between trial testimony and the police report.
The defendant additionally complains that the trial court erred in failing to include the police reports as a sealed exhibit with the appellate record. In State v. Gabriel, 450 So.2d 611 (La.1984), the police report was included with the record on appeal as a sealed exhibit. There the trial *147 court had performed an in camera inspection of the police report and found no inconsistency between the testimony and the report. The Louisiana Supreme Court, however, found significant discrepancies and reversed, remanding for a new trial. However, unlike Gabriel, in which the defense counsel isolated a narrow area and concentrated on bringing forth an inconsistency related to the police officer's identification of the defendant Gabriel as the driver of the getaway car, the defense counsel herein was apparently merely on a "fishing expedition" to obtain the reports. Although the reports were sealed and included with the record in Gabriel, that case contains no mandatory language which would make this procedure binding on this Court. Moreover, to impose that rule on the showing made in the instant case would make the police reports subject to inclusion in the appellate court record simply upon the defendant's request. Compare State v. Ates, 418 So.2d 1326 (La.1982); State v. Mitchell, 459 So.2d 91 (La.App. 2d Cir.1984) which involved the inclusion of witness statements within police reports and grand jury proceedings. In those cases, an in camera inspection was required in order to determine if the material contained in the reports or transcript was discoverable under Brady v. Maryland.
Assignment of Error Number 12 presents a closely related issue. Defense complains that the trial court erred in refusing to allow defendant to seal the report and place it in the record for appeal, stating that "if the Court of Appeal wants them and they need them, they can get them." In State v. Gabriel, supra, defense counsel, on cross-examination during the State's case-in-chief, elicited testimony from the police officer that the police report may have varied from trial testimony. In that case, the Supreme Court found that the trial court erred in refusing to disclose the contents of the police report to the defense counsel.
In contrast to the situation presented in State v. Gabriel, the defendant herein did not establish at trial that any inconsistency may have existed. Defendant alleges that Officer Holley's report did not corroborate Officer McCauley's story that he recovered the drug money near Paul Burns. However, Officer Holley's report, which was included in a discovery response to the defendant, makes no mention of the recovery of the money at the scene, as Officer Holley was not the arresting officer and did not see the money. Officer Holley's report merely refers to Officer McCauley's report for details of the arrest. Therefore, defendant showed no variance between Officer Holley's report and Officer McCauley's testimony at trial. Moreover, Officer Holley testified consistently at trial that as the defendant was removed from his car, five $20 bills spilled to the ground from his lap. The defendant repeatedly attempted to show that Officer Larry Simon testified contradictorily about having seen the money as it fell to the ground; however, a careful reading of the transcript reveals that no inconsistency was established. Officer Larry Simon testified that he did not see the money as it fell to the ground, but observed the money as Officer McCauley picked it up from the ground and raised up with it in his hands.
Defendant also asserts a related claim in Assignment of Error Number 14. Defendant contends that the trial court erred in refusing to order the discovery of exculpatory evidence in at least two instances. In one portion of that assignment the defendant contends that it was error for the court to refuse to order the district attorney to furnish the applicant with Officer McCauley's police report. This complaint has been separately treated above. In the second portion of Assignment of Error Number 14, defendant argues the trial court erroneously failed to order the district attorney to determine whether Larry Simon had made contrary representations to the district attorney, and whether he had ever admitted to the prosecutor that he did not see the money recovered at the scene of the offense.
The basis of defense counsel's argument is that in the State motion for continuance filed April 29, 1986, the State moved for a continuance on the basis that Agent Mark *148 McCauley was a witness in the matter and was unavailable to testify because he flew to California to attend a funeral of a member of his wife's family. The motion also asserts that Agent McCauley recovered physical evidence from the scene, to-wit, five $20 bills recovered from the defendant's lap when the defendant was arrested. The motion also alleges that this was the money used in the drug transaction, and that Agent McCauley additionally signed the consent to search form, signed by the defendant's wife.
With reliance upon this motion, the defense counsel argued during his cross-examination of Officer Larry Simon that there were testimonial inconsistencies "which entitled him to further discovery." Larry Simon testified that he saw the five $20 bills after Agent McCauley picked them up from the ground. Defense counsel construes the motion as a statement that only one witness saw the money that was recovered at the scene. Therefore, he infers that Agent Larry Simon's testimony is either inaccurate, or concocted, entitling him to further discovery on this point.
It is unclear exactly what material defense counsel seeks. Defense counsel asserts that the transcribed record will reflect that the reason for the continuance was Layton's statement that Officer McCauley is the only one who saw the money. However, the transcript of the hearing held on April 29, 1986, was not designated as part of the record before this Court. Additionally, Officer Simon testified that he had only informed the prosecutor that he saw the money at a conference in the prosecutor's office the week before trial. The officer noted that he had never been asked prior to that point whether he saw the money, and he did not think it was relevant at any other time to mention it. Defendant has not established an inconsistency, and does not show that any other evidence exists that would benefit his claim. These assignments are without merit.

ASSIGNMENT OF ERROR NO. 13:
Defendant asserts that the trial court committed prejudicial error in allowing the State to impeach Paul Burns by examining him about his drug use.
During the State's cross-examination of Burns, the State asked him "[I]sn't it true you smoke marijuana?" The witness responded negatively. Defense counsel objected, and the court ruled that the question went to the credibility of the witness, and was therefore permissible. The prosecutor next asked, "[I]sn't it true that your Miranda rights were read to you that night?" The defendant answered, "... yes, it is and they also asked me that night if I had marijuana or smoked marijuana that night and I informed them the same answer, no I do not."
La.R.S. 15:494 states that it is not competent to impeach a witness as to collateral facts or irrelevant matter. Additionally, the credibility of a witness may be attacked by showing that his general reputation for truth or for moral character is bad, but such an attack must be limited to general reputation and cannot go into particular acts, vices, or courses of conduct. La.R.S. 15:490; 15:491. However, when the purpose is to show that in the specific case on trial, a witness is biased, has an interest, or has been corrupted, it is competent to interrogate as to any particular facts showing or tending to show such bias, interest or corruption, and unless the witness distinctly admits such facts, any other witness may be examined to establish the same. La.R.S. 15:492.
Although the questioning of the defendant in this regard specifically violated the prohibition of La.R.S. 15:491, this error is harmless. The trial was conducted before a judge alone, and the witness denied drug usage following the prosecutor's question, and again denied that activity after the prosecutor had moved on to another area of questioning. Moreover, it appears that the prosecutor was apparently setting the stage for impeachment testimony in the form of defendant's prior convictions, one of which was for possession of marijuana. This assignment lacks merit.

*149 ASSIGNMENT OF ERROR NO. 15:
In Assignment of Error Number 15, the defense presents an extension of Assignments of Error Numbers 16, 17, 18 and 19. Specifically, defendant complains that the trial court, under the state of mind exception to the hearsay rule erred in disallowing Kathy Lee to testify Paul Burns told her he wanted to borrow scales and plastic bags to send promotional products through the mail. Additionally, the defendant asserts in this assignment of error that the trial court erroneously precluded him from cross-examining Officer McCauley about a prior inconsistent written statement by McCauley. Lastly, the defendant complains that Teresa Burns was foreclosed from testifying as to what her husband said to the confidential informant prior to Burns' arrest.
With regard to the questioning of Officer McCauley, the transcript reflects that defense counsel questioned Officer McCauley about the arrest report prepared on August 15. Defense counsel asked why the officer had written on the police report that Paul Burns had distributed marijuana to Agent McCauley, scratched through that answer, and had written Officer Holley. The witness explained that the statement was a brief synopsis of the facts, and was not intended to give a detailed analysis of what transpired on the night of the arrest. The officer also explained that in his view Paul Burns did distribute marijuana "through to Officer Holley" although he did not actually hand the marijuana to him. Defense counsel continued to question the officer along these lines, until an objection was sustained as to the argumentative nature of the questioning. Following that action, defense counsel persisted in asking further questions along the same lines and an objection was made that the questioning was repetitious. Defense counsel explained that the officer had given a prior inconsistent statement and wanted to detail that inconsistency clearly into the record. The court ruled that he would agree with defense counsel if it were not for the law of principals that does not require an absolute direct involvement by the defendant. The court ruled that the matter was one for the court to consider as to credibility and suggested that the trial move forward.
The trial court was within the discretion vested in it by La.R.S. 15:275 in controlling the examination of this witness. The alleged inconsistency in the officer's report and his testimony had been explored by defense counsel and explained by the witness for the prosecution. At the point that the questions became repetitious, the trial judge did not abuse his discretion in terminating the questioning of the witness. See, more specifically, Assignments of Error Numbers 10, 12, 14 and 18.
With regard to Kathy Lee's testimony, State v. Martin, 458 So.2d 454 (La.1984) contains a thorough discussion of the stateof-mind exception to the hearsay rule.
"The uses of an out of court statement `to show state of mind' present several instances of nonassertive uses of out of court statements. An out of court statement may be used circumstantially to show its effect on the state of mind of a person who heard the statement. See State v. Webb, 372 So.2d 1209 (La.1979); State v. Ford, 368 So.2d 1074 (La.1979); State v. Morgan, 211 La. 572, 30 So.2d 434 (1947); McCormick, supra, § 249; 6 Wigmore, supra, §§ 1788-1789. An out of court statement may also be offered to show the speaker's state of mind. The statement may be a direct assertion of the speaker's state of mind or it may indirectly tend to establish that the speaker had a particular state of mind. If the statement is a direct assertion of the speaker's state of mind, then it is offered for the truth of the matter asserted but it usually falls within an exception to the hearsay rule for declarations of a then existing state of mind. See McCormick, supra, § 249, 6 Wigmore, supra, § 1790; 4 Weinstein, supra, Par. 801(c)[01] p. 801-72; Federal Rule of Evidence 803(3). If the statement only indirectly tends to prove a certain state of mind then it is not hearsay because the truth of the assertion and the credibility of the declarant are not relied upon. Rather, the fact that the statement *150 was made, regardless of its truth, is relevant to show the speaker's knowledge, intent, or some other state of mind. State v. Edwards, 420 So.2d 663, 671 (La.1982); State v. Sheppard, 371 So.2d 1135, 1142 (La.1979); McCormick, supra, §§ 249, 295; 6 Wigmore, supra, § 1790. Although in each of the above instances the use of a statement to show state of mind would qualify as nonhearsay or as an exception to the hearsay rule, state of mind evidence is admissible only if the particular person's state of mind which is being shown is itself in issue or is relevant to prove a fact in issue. See State v. Weedon, supra [342 So.2d 642]. The fact that the statement is offered for a nonhearsay purpose does not alone make the statement admissible; the general requirement of relevance must also be met before the out of court statement is admissible evidence."
Thus, although Burns' statement may have been admissible under the stateof-mind exception, the relevance of the information would still have to be established. The fact that defendant told Kathy Lee he intended to use the scale and baggies for product promotional participation has only peripheral or no relevance to the issue of defendant's guilt or innocence of the crime charged. Additionally, the trial court obviously concluded that defendant was heavily involved in mail order purchases as reflected by his statement to that effect, quoted previously. As such, there is no reasonable possibility that the exclusion of this evidence would have contributed to the conviction. Thus, if the statement was properly admissible as an exception to the hearsay rule for the state of mind of the declarant, the erroneous exclusion of the evidence would be harmless error. See State v. Gibson, 391 So.2d 421 (La.1980).
Defendant's final complaint within this assignment of error relates to the trial court's sustaining of a hearsay objection during the testimony of Teresa Burns. Teresa Burns was precluded from testifying as to the conversational exchange between her husband and the confidential informant at the scene of the crime. The defendant asserts that these statements were admissible as part of the res gestae of the crime.
To constitute res gestae, the circumstances and declarations made at trial must be necessary incidents of a criminal act, or the immediate concomitants of it, or form in conjunction with it one continuous transaction. State v. Mitchell, 437 So.2d 264 (La.1983). The res gestae doctrine includes not only spontaneous utterances and declarations made before and after the commission of a crime, but also the testimony of witnesses pertaining to what they heard or observed before, during or after the commission of the crime, if the continuous chain of events is evident under the circumstances. State v. Brown, 395 So.2d 1301 (La.1981). Those things forming part of the res gestae of an offense are always admissible. La.R.S. 15:447.
The conversation which transpired between the confidential informant and the defendant herein as part of the chain of events leading up to the purchase of the controlled dangerous substance clearly formed part of the res gestae of the crime. As such, the trial court erred in failing to allow this testimony. However, in State v. Gibson, supra, the Louisiana Supreme Court adopted the test of harmless error enunciated by the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under that test for harmless error, the question is whether there is a reasonable possibility that the admission or exclusion of certain evidence, depending on the case, might have contributed to the conviction. The Supreme Court has also stated that the court must be able to declare that the error was harmless beyond a reasonable doubt. State v. Martin, supra; State v. Gibson, supra.
During the defense case-in-chief, the defendant testified on his own behalf. Defendant was allowed to testify at great length about the circumstances surrounding the events which transpired immediately prior to his arrest, including the statements made to him by the confidential informant. *151 Since the declarant, Paul Burns, was actually present at trial, and did testify as to the statements sought to be introduced by Teresa Burns, the error in failing to admit the statements was harmless beyond a reasonable doubt. Consequently, this assignment lacks merit.

ASSIGNMENT OF ERROR NO. 16:
Defendant asserts that the trial court erred in foreclosing the cross-examination of Shreveport Police Officer Jack Miller during his testimony on rebuttal.
During the rebuttal portion of its case, the prosecution presented the testimony of Officer Miller. The officer testified as to certain aspects of the consent to search, i.e., whether or not Mrs. Burns was told she would be placed under arrest if she did not sign a consent to search and other related matters. In other words, the State's rebuttal was specifically limited to the issue of the legality of the consent to search obtained from Mrs. Burns. Thereafter, defendant asked Officer Miller whether he smoked marijuana, whether he wrote a police report in the case, whether the serial numbers of the money involved in the transaction were written down, and whether the scale, bag and tray were in an attache case. Following the posing of each question, the State objected, arguing that the questions exceeded the scope of rebuttal.
The defendant points out the correct principle that once a witness is sworn, he is subject to cross-examination upon the whole case. However, as previously cited, the trial judge has discretion with respect to the examination of witnesses. At the time that this witness was cross-examined the defense had been allowed the opportunity to fully cross-examine him on direct examination. The questions posed by defense counsel following his direct rebuttal testimony were repetitive, and the subject of a proper prosecution objection. Moreover, the defendant does not argue what evidence he sought to elicit from this witness which would have been beneficial to his defense. Consequently, the trial court did not abuse its discretion in curtailing the examination of this witness. Further, no prejudice has been demonstrated by this foreclosure. In order for this Court to reverse a conviction, the nature of the error must be such as to prejudice the substantial rights of the accused. La.C.Cr.P. Art. 921. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 17:
Defendant avers that the trial court erred by preventing him from questioning Shreveport Police Department Officer Jack Miller as to whether or not the officer smoked marijuana. The prosecutor objected, arguing that the question was out of the scope of redirect examination. The trial court sustained the objection.
La.R.S. 15:494 provides that it is not competent to impeach a witness as to collateral facts or irrelevant matter. The credibility of a witness may be attacked by showing that his general reputation for truth or for moral character is bad, but such an attack must be limited to general reputation and cannot go into particular acts, vices or courses of conduct. La.R.S. 15:490; 15:491.
Defendant asserts that the question posed to Officer Miller was to determine whether the State's witness had a bias or interest in the case.
When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question as to any particular facts showing or tending to show such bias, interest or corruption, and unless he distinctly admits such fact, any other witness may be examined to establish the same. La.R.S. 15:492.
We do not understand how the defendant could establish a bias against him based on an officer's use of marijuana. The more logical inference would be that if an officer used drugs, he would be more sympathetic to the defendant. However, in order for a bias or prejudice of a witness to be relevant, the bias of the witness must be personal against the defendant, rather than general in nature. State v. Williams, 445 *152 So.2d 1171 (La.1984); State v. Bretz, 394 So.2d 245 (La.1981), U.S. cert. denied, 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981).
Consequently, even if the defendant could establish a bias or prejudice on the part of this witness against drug offenders in general, the defendant has shown no connexity of personal bias or prejudice against the defendant himself. Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 19:
Defendant contends the trial court erroneously allowed the State to introduce hearsay testimony under the state-of-mind exception to the hearsay rule. The defendant sets forth three specific examples:
"MARK HOLLEY: I was contacted by Sergeant Miller. He informed me that Mr. Billy Fontenot had an individual who had some marijuana for sale"
. . . . . .
(Vol. I, p. 27)
"MARK HOLLEY: After receiving this information I was assigned to be the undercover agent in this operation in an attempt to make a purchase of marijuana from Mrs. Burns. Myself and ex-police officer Marshall Johnson would be the undercover officers. We were to meet Mr. Burns and Mr. Fontenot." (Vol. I, p. 28).
Other inadmissible hearsay:
"MARK HOLLEY: Okay, I asked Mr. Fontenot where was the subject I was supposed to buy the marijuana from?
Q. Did you learn where the subject was?
A. Yes, I did." (Vol. I, p. 33) OFFICER McCAULEY:
A. "He told us that he had given Billy Fontenot, who was the confidential informant in this case, the $100 to pay the subject who was selling the marijuana in order for Mr. Fontenot to transport it back to the subject in the dark green colored Volvo. We then moved into a position where we would be able to observe Billy Fontenot do exactly that, walk to the car, make some type of exchange and then we would move in from that point and make the arrest." (Vol. I, p. 91)
In State v. Watson, 449 So.2d 1321 (La. 1984), U.S. cert. den. 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985), the Supreme Court stated that a police officer, in explaining his own actions, may refer to statements made to him by other persons involved in the case. Such statements are admitted, not to prove the truth of the assertion, but to explain the sequence of events leading to the arrest of the defendant from the viewpoint of the investigating officer.
In each instance that the defendant cites, the police officer was testifying to explain the sequence of events leading to the defendant's arrest. Thus, the statements were properly admitted as an exception to the hearsay rule. This assignment of error has no merit.

DECREE:
For the reasons set forth, defendant's conviction and sentence are affirmed.
SEXTON, J., concurs with written reasons.
SEXTON, Judge, concurring.
I concur, differing somewhat as to the treatment of Assignment of Error No. 13.